[No. C022807. Third Dist. Dec. 18, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
JEFFREY ARTER DAMON, Defendant and Appellant.

COUNSEL

Robert D. McGhie for Defendant and Appellant.

Daniel E. Lungren, Attorney General, Herschel T. Elkins, Assistant Attorney General, Ronald A. Reiter and Michael R. Botwin, Deputy Attorneys General, Michael L. Ramsey, District Attorney, and Robert W. MacKenzie, Deputy District Attorney, for Plaintiff and Respondent.

OPINION

SIMS, Acting P. J.—Defendant Jeffrey Arter Damon, doing business as Autometrics, appeals from a judgment following a court trial in the People's civil action alleging unfair business practices (Bus. & Prof. Code, §§ 17206, 17500)[1] in defendant's operation of an automotive repair dealership, pursuant to the Automotive Repair Act (§ 9880 et seq.). Defendant contends this action, which followed an administrative proceeding by the Department of Consumer Affairs, was barred by res judicata, the rule against splitting causes of action, and the double jeopardy clause of the federal Constitution. We shall affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Although this is an appeal from the civil action, we begin chronologically with the antecedent administrative proceeding which, according to defendant, bars the civil action.

In July 1993, the Chief of the Bureau of Automotive Repair (BAR) of the Department of Consumer Affairs (DCA), represented by the Attorney General's office, filed an administrative accusation against "AUTO METRICS . . . JEFFREY DAMON, Owner," alleging the following violations of the Automotive Repair Act, sections 9884.7 and 9884.9: false representations that repair work had been done, failure to give written estimates, charging in excess of estimates, failure to document additional customer authorization for revised estimates, performing unnecessary work, and failure to record odometer readings on work orders. The accusation sought (1) temporary or permanent invalidation of the automotive repair dealer registration issued to Autometrics, Jeffrey Damon, owner, pursuant to section 9884.7, and (2) reimbursement of investigation costs pursuant to section 125.3.

---

[1]Undesignated statutory references are to the Business and Professions Code.

In January 1994, the parties submitted the matter to the administrative law judge (ALJ) upon stipulations. The ALJ issued a proposed decision to place Autometrics on probation for three years, with registration suspended for fourteen days, and an order to pay $4,600 in reimbursement for DCA's investigation costs. Autometric's registration was also revoked, but the revocation was stayed for the three-year probationary period, and the stay would become permanent and the registration restored if the probationary period was successfully completed without further violation.[2]

In May 1994, the interim director of DCA adopted the ALJ's decision, effective August 13, 1994. DCA closed defendant's repair shop for two weeks in September 1994.

On August 11, 1994, the People, represented by the Butte County District Attorney, filed against defendant doing business as Autometrics the civil complaint which is the subject of this appeal. The complaint alleged defendant engaged in unlawful business practices in his operation of his automotive repair dealership. The first amended complaint, which is the operative pleading, alleged unfair competition (§ 17200) and false advertising (§ 17500). The first count, for unfair competition, alleged the same violations of the Automotive Repair Act which were the subject of the administrative proceeding, i.e., failure to provide a written estimate, failure to record odometer readings, falsely stating automotive parts had been replaced, and performing repair work without obtaining customer authorization, in

---

[2]Defendant asserts the administrative proceeding was against him. The People respond it was against defendant's registration, not against defendant personally, because section 9884.7 provides "the [DCA] director . . . may . . . invalidate temporarily or permanently, the *registration* of an automotive repair dealer for . . . acts or omissions . . . done by the automotive repair dealer or [employees, etc.]." (Italics added.) It appears the administrative proceeding was against both defendant and the registration. Thus, DCA may invalidate "the registration *of an automotive repair dealer . . . .*" (§ 9884.7, italics added.) The administrative accusation was against "Auto[]Metrics [address and registration number] Jeffrey Damon, Owner." The administrative order revokes the "Registration [number] issued to Auto[]Metrics, Jeffrey Damon, Owner . . . ." Although the ALJ did not refer to defendant individually in his proposed order suspending the registration, placing Autometrics on probation and ordering reimbursement of investigation costs, the introductory paragraphs to the ALJ's decision referred to "Auto[]Metrics and Jeffrey Damon, Owner (hereafter collectively 'respondent')." The decision thereafter does not use the term "respondent" but speaks of Autometrics, which is apparently used in the collective sense. Moreover, the reimbursement of investigation costs was sought pursuant to section 125.3, which authorizes the ALJ "to direct a *licentiate* found to have committed a violation or violations of the licensing act to pay a sum not to exceed the reasonable costs of the investigation and enforcement of the case." (Italics added.) A " 'licentiate' " is "*any person authorized by a* license, certificate, *registration,* or other means to engage in a business or profession regulated by this code . . . ." (§ 23.8, italics added.) We thus believe the administrative proceeding was against both the registration and defendant.

violation of sections 9884.7 and 9884.9.[3] The second count alleged false and misleading advertising in that defendant placed an advertisement in the 1993 Pacific Bell Yellow Pages falsely claiming Autometrics was approved by the California State Automobile Association (AAA).

The pleading sought injunctive relief to enjoin further violations, as well as restitution to consumers, civil penalties pursuant to sections 17206 and 17500, and costs of investigation.

Defendant demurred to the first amended complaint on the grounds of res judicata, the rule against splitting causes of action, and double jeopardy, because the first count of the civil complaint alleged the same misconduct that was the subject of the administrative proceeding.

The trial court took judicial notice of documents from the administrative proceeding but overruled the demurrer, concluding (1) the present action sought civil penalties unavailable in the previous administrative proceeding, which was for revocation of registration, (2) section 17205[4] provides cumulative remedies, and (3) the double jeopardy case relied upon by defendant applied only where the second sanction was grossly disproportionate to the damages caused.

In September 1995, a court trial was held.[5] Defendant filed a motion *in limine* for judgment on the pleadings, revisiting the issues raised on demurrer. The trial court took judicial notice of documents from the administrative proceeding. The trial court denied the motion as to res judicata and splitting causes of action and reserved ruling on the double jeopardy issue.

Following the court trial, the trial court denied the motion for judgment on the pleadings and stated in its ultimate "STATEMENT OF DECISION AND JUDGMENT" in favor of the People:

". . . Defendant's motion in Limine for Judgement [*sic*] on the pleadings is denied; the court finds that the 3 years probation, two week suspension

---

[3] " 'Unlawful business activity' proscribed under section 17200 includes ' "anything that can properly be called a business practice and that at the same time is forbidden by law." ' . . . '[I]n essence, an action based on . . . section 17200 to redress an unlawful business practice "borrows" violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under section 17200 et seq. and subject to the distinct remedies provided thereunder.' " (*Farmers Ins. Exchange* v. *Superior Court* (1992) 2 Cal.4th 377, 383 [6 Cal.Rptr.2d 487, 826 P.2d 730], citations omitted.)

[4] Section 17205 provides: "Unless otherwise expressly provided, the remedies or penalties provided by this chapter are cumulative to each other and to the remedies or penalties available under all other laws of this state."

[5] The record on appeal does not contain a reporter's transcript.

and two week closure of Defendant's automotive repair business by the Bureau of Automotive Repair, pursuant to the previous administrative proceedings, were not disproportionate and therefore not punitive. Therefore, Defendant could be punished in this action. It was uncontested that the payment of investigative costs in the sum of $4,600.00, pursuant to the previous administrative proceedings, was remedial and that the sanctions imposed in this proceeding are punitive.

". . . Defendant is found liable for violating . . . section 9884.7(1)(a)[6] by making a false statement that his business had replaced the head gasket on a [customer's vehicle], which by the exercise of reasonable care, would have been known by Defendant to be untrue and misleading. Defendant is ordered to pay a civil penalty of $750.00 to the Treasurer of Butte County, through the Clerk of this Court, pursuant to . . . section 17206(a).[7]

". . . Defendant is found liable for violating . . . section 9884.9(a)[8] by performing and charging for repair work completed on [a vehicle] owned by the Bureau of Automotive Repair, without having first obtained authorization for competing [sic] such work from the authorized Bureau of Automotive Repair representative. Defendant is ordered to pay a civil penalty of $750.00 to the Treasurer of Butte County . . . pursuant to . . . section 17206(a).

". . . Defendant is found liable for violating . . . section 9884.7(1)(a) by falsely stating on an automotive repair invoice that a 'spark control unit' had been replaced on a [vehicle] owned by the Bureau of Automotive Repair, a

---

[6]Section 9884.7, subdivision (1)(a), provides: "The director [of consumer affairs], where the automotive repair dealer cannot show there was a bona fide error, may refuse to validate, or may invalidate temporarily or permanently, the registration of an automotive repair dealer for any of the following acts or omissions related to the conduct of the business of the automotive repair dealer, which are done by the automotive repair dealer or any mechanic, employee, partner, officer, or member of the automotive repair dealer. [¶] (a) Making or authorizing in any manner or by any means whatever any statement written or oral which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

[7]Section 17206, subdivision (a), provides in part: "Any person who engages, has engaged, or proposes to engage in unfair competition shall be liable for a civil penalty not to exceed . . . ($2,500) for each violation, which shall be assessed and recovered in a civil action brought in the name of the people of the State of California by the Attorney General or by any district attorney [or other specified counsel] in any court of competent jurisdiction."

[8]Section 9884.9, subdivision (a), provides in part: "The automotive repair dealer shall give to the customer a written estimated price for labor and parts necessary for a specific job. No work shall be done and no charges shall accrue before authorization to proceed is obtained from the customer. No charge shall be made for work done or parts supplied in excess of the estimated price without the oral or written consent of the customer which shall be obtained at some time after it is determined that the estimated price is insufficient and before the work not estimated is done or the parts not estimated are supplied. . . ."

statement, which by the exercise of reasonable care, would have been known by Defendant to be untrue and misleading. Defendant is ordered to pay a civil penalty of $750.00 to the Treasurer of Butte County . . . pursuant to . . . section 17206(a).

". . . Defendant is found liable for violating . . . section 17500[9] by placing an advertisement in the Pacific Bell Yellow Pages . . . representing that his business was 'AAA Approved,' when, in fact, his business was not an AAA approved auto repair facility. If he had exercised reasonable care, Defendant would have known that his business was not AAA approved. This Court finds that the advertisement was placed by Defendant in the Yellow Pages with the intent to induce the public to enter into a contract for goods and/or services. Defendant is ordered to pay a civil penalty of $750.00 to the Treasurer of Butte County . . . pursuant to . . . section 17206(a).

". . . Defendant is ordered to pay a total of $3,000.00 . . . in civil penalties to the Treasurer of Butte County . . . .

". . . Defendant is ordered to refrain from violating any portion of Article 3 of Chapter 20.3 of the Automotive Repair Act [§ 9880 et seq.] and to refrain from violating . . . sections 17200 and 17500 for a period of five years, beginning September 21, 1995. . . ."

Each side bore its own costs and attorneys' fees.

Defendant appeals.

## DISCUSSION

### I. *Res Judicata*

██ Defendant contends the first amended complaint was barred by the doctrine of res judicata. We disagree.

---

[9]Section 17500 provides in part: "It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, any statement, concerning such real or personal property or services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any such person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell such personal property or services, professional or otherwise, so advertised at the price stated therein, or as so advertised. Any violation of the provisions of this section is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine not exceeding . . . ($2,500), or by both."

■ "The doctrine of *res judicata* gives certain *conclusive effect* to a *former judgment* in subsequent litigation involving the same controversy. It seeks to curtail multiple litigation causing vexation and expense to the *parties* and wasted effort and expense in *judicial administration*." (7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 188, p. 621, original italics.) The doctrine of res judicata has a double aspect. "In its primary aspect the doctrine of res judicata [or 'claim preclusion'] operates as a bar to the maintenance of a second suit between the same parties on the same cause of action." (*Clark* v. *Lesher* (1956) 46 Cal.2d 874, 880 [299 P.2d 865]; see also *People* v. *Sims* (1982) 32 Cal.3d 468, 477, fn. 6 [186 Cal.Rptr. 77, 651 P.2d 321].) "[I]n a new action on the *same cause of action,* a prior judgment for the defendant is a complete *bar* . . . , and a prior judgment for the plaintiff likewise precludes the new action because it results in a *merger,* superseding his claim by a right of action on the judgment . . . ." (7 Witkin, *op. cit. supra,* § 189, pp. 622-623.) The secondary aspect is "collateral estoppel" or "issue preclusion," which does not bar a second action but "precludes a party to an action from relitigating in a second proceeding matters litigated and determined in a prior proceeding." (*Sims, supra,* 32 Cal.3d at p. 477; Rest.2d Judgments, § 27, p. 250.) Court decisions and legal commentators often refer generally to "res judicata," without distinguishing between the two aspects. (*Sims, supra,* 32 Cal.3d at p. 477, fn. 6.)

■ Here, defendant invokes res judicata in its primary aspect of claim preclusion.[10] Defendant argues the administrative proceeding and the civil action both involved the same "cause of action" and the administrative adjudication operated as a merger, precluding the state from seeking a different remedy for the same cause of action. Defendant further argues res judicata precludes not only claims which were actually litigated but also claims which could have been litigated in the first action, and therefore res judicata also precludes the civil action's second count for false advertising.

However, even assuming for the sake of argument that the two cases involved the same "cause of action"[11] and further assuming for the sake of argument that there is a sufficient identity of parties, res judicata would still not apply in this case.

---

[10]Obviously, defendant is not interested in the secondary aspect of res judicata, because application of collateral estoppel in this case would merely prevent him from relitigating in the civil action the question of whether he violated the Automotive Repair Act, which was decided adversely to defendant in the administrative action. We express no view on whether collateral estoppel should be applied in the circumstances of this case.

[11]"Cause of action" is defined in accordance with Pomeroy's "primary right" theory. " 'A cause of action consists of (1) a *primary right* possessed by the plaintiff and a corresponding *primary duty* imposed upon the defendant, and (2) a *delict* or *wrong* committed by the defendant which constitutes a breach of such primary right and duty.' " (*Skrbina* v. *Fleming Companies* (1996) 45 Cal.App.4th 1353, 1364 [53 Cal.Rptr.2d 481], original italics.) Here,

Thus, there is no prior judgment but only an administrative decision. Res judicata principles sometimes apply to administrative decisions, but not always. The cases typically deal with res judicata's secondary aspect—collateral estoppel. ▉ Thus, in seeking to determine whether an administrative decision had collateral estoppel effect, the California Supreme Court in *People* v. *Sims, supra,* 32 Cal.3d 468, found "appropriate guidance in *United States* v. *Utah Constr. Co.* (1966) 384 U.S. 394 [16 L.Ed.2d 642, 86 S.Ct. 1545]. There, the United States Supreme Court stated: 'Occasionally courts have used language to the effect that *res judicata* principles do not apply to administrative proceedings, but such language is certainly too broad. . . .' [Citation.] Collateral estoppel may be applied to decisions made by administrative agencies '[w]hen an administrative agency is *acting in a judicial capacity* and *resolves disputed issues of fact* properly before it which the parties have had an *adequate opportunity to litigate . . . .*' [Italics added by California Supreme Court.] This standard formulated by the Supreme Court is sound, and it comports with the public policy underlying the collateral estoppel doctrine 'of limiting litigation by preventing a party who has had one fair trial on an issue from again drawing it into controversy. [Citations.]'" (*Sims, supra,* 32 Cal.3d at p. 479, fn. omitted.) *Sims* held a department of social services (DSS) administrative adjudication that a welfare recipient had not been overpaid had binding effect in a collateral criminal proceeding charging welfare fraud.

However, the California Supreme Court did not hold all administrative adjudications have full res judicata effect. In *Mahon* v. *Safeco Title Ins. Co.* (1988) 199 Cal.App.3d 616 [245 Cal.Rptr. 103], we rejected an argument that *Sims* stood for the proposition conclusive effect must be accorded to any administrative adjudication that resulted from a judicial-like adversary proceeding. (*Id.* at p. 622.) We pointed out the *Sims* court noted " '[m]uch uncertainty and confusion exist in the case law as to whether the decisions of an administrative agency may ever collaterally estop a later action.' " (*Ibid.,* citing *People* v. *Sims, supra,* 32 Cal.3d at p. 477.) We further noted the *Sims* court "explicitly eschewed any effort to reconcile the existing case law" and instead limited itself to deciding whether a DSS fair hearing decision had binding effect in a collateral criminal proceeding. (*Mahon, supra,* 199 Cal.App.3d at p. 622.) We further noted that although the principal rationale for giving the DSS decision binding effect was that the administrative hearing was a judicial-like adversary proceeding, the Supreme Court "also supported its holding with the assertion that 'the uniqueness of the statutory scheme governing prosecutions for AFDC fraud and the circumstances of the individuals receiving welfare benefits make application of collateral estoppel

---

defendant claims both cases involved the same right or obligation, and only the relief differed. We find it unnecessary to decide whether both cases involved the same cause of action.

particularly appropriate in this case.' " (*Mahon, supra*, 199 Cal.App.3d at p. 622, citing *Sims, supra*, 32 Cal.3d at p. 489.)

In *Mahon* v. *Safeco Title Ins. Co., supra*, 199 Cal.App.3d 616, we held a prior Department of Employment Development administrative decision finding no wrongful discharge did not collaterally estop a former employee from litigating the issue of wrongful discharge in a civil action against the former employer. During the pendency of the litigation, a provision of the Unemployment Insurance Code was enacted, providing that such adjudications had no collateral estoppel effect. We held the new statute applied, because it did not depart from any clearly established preexisting principle. (*Id.* at pp. 620-623.)

As concerns us here, in *Mahon* we quoted the Restatement Second of Judgments, as follows: " 'An adjudicative determination of a claim by an administrative tribunal does not preclude relitigation in another tribunal of the same or a related claim based on the same transaction if the scheme of remedies permits assertion of the second claim notwithstanding the adjudication of the first claim.' " (*Mahon* v. *Safeco Title Ins. Co., supra*, 199 Cal.App.3d at p. 622, quoting Rest.2d Judgments, § 83, subd. (3), pp. 266-267.)

*Mahon* is consistent with recent pronouncements of the United States Supreme Court and the California Supreme Court, reflecting that administrative decisions should not be given res judicata effect if the statutory scheme explicitly or implicitly shows a contrary intent. (*Astoria Federal S. & L. Assn.* v. *Solimino* (1991) 501 U.S. 104, 110-112 [115 L.Ed.2d 96, 106-107, 111 S.Ct. 2166] [federal age discrimination in employment law, by assuming possibility of federal consideration after state agencies finished their consideration, implied that federal courts should not give preclusive effect to state administrative agency's judicially unreviewed findings on state law age discrimination claim]; *Gikas* v. *Zolin* (1993) 6 Cal.4th 841, 851-852 [25 Cal.Rptr.2d 500, 863 P.2d 745] [traditional collateral estoppel principles did not govern where Legislature had specified in Vehicle Code exactly what preclusive effect criminal proceeding had on administrative license suspension for drunk driving].)

Here, we have a statutory scheme of remedies that contemplates proceedings in different tribunals affording different remedies which are cumulative, not mutually exclusive. Thus, the Business and Professions Code provides the remedies under sections 17200 and 17500 are cumulative

to other remedies provided by law. (§ 17205, fn. 4, *ante*; § 17534.5.[12]) Section 17205 "reflects legislative intent that the remedy under . . . section 17200 not displace any other remedy that might exist." (*Farmers Ins. Exchange* v. *Superior Court* (1992) 2 Cal.4th 377, 395 [6 Cal.Rptr.2d 487, 826 P.2d 730].)

Defendant thinks the statutes mean "cumulative" in the sense that a plaintiff could receive both remedies, but only if both remedies were sought in the same suit. However, both remedies *cannot* be sought in the same suit.

Thus, an action to suspend or revoke a registration under section 9884.7 (fn. 6, *ante*) may be brought only before an administrative hearing officer pursuant to section 9884.12[13] and Government Code section 11502.[14] The trial court does not have jurisdiction to hear such cases. The administrative tribunal does not have jurisdiction to award damages or penalties for unfair business practices. It may only take action against the registration and award reimbursement of investigation costs. (§§ 9884.7, 125.3.)

In contrast, the civil penalties authorized by sections 17200 and 17500 must be pursued in superior court and cannot be brought administratively. Thus, section 17206 (fn. 7, *ante*) authorizes a civil penalty for unfair competition and provides such penalty "shall be assessed and recovered in a civil action," in which "[t]he court" shall impose the penalty. Section 17204 provides in part: "Actions for any relief pursuant to this chapter shall be prosecuted exclusively in a court of competent jurisdiction [by specified prosecutors]."[15] The civil action provides no remedy for suspension or revocation of a registration. It provides only for (1) monetary civil penalties

---

[12]Section 17534.5 provides: "Unless otherwise expressly provided, the remedies or penalties provided by this chapter [including section 17500] are cumulative to each other and to the remedies or penalties available under all other laws of this state."

[13]Section 9884.12 provides: "All proceedings to refuse to validate, or temporarily or permanently to invalidate, a registration shall be conducted pursuant to Chapter 5 (commencing with Section 11500), Part 1, Division 3, Title 2 of the Government Code [entitled 'Administrative Adjudication']."

The People cite section 9889.1, which appears to address licenses for official lamp and brake adjusting stations.

[14]Government Code section 11502 provides in part: "All hearings of state agencies required to be conducted under this chapter shall be conducted by administrative law judges on the staff of the Office of Administrative Hearings. . . ."

[15]In section 17204, the words "exclusively in a court of competent jurisdiction" were added to the statute in a 1993 amendment. (Stats. 1993, ch. 926, § 2.) Defendant does not contend that an action for unfair business practices could have been handled administratively in this case, where the administrative proceeding was filed in July 1993 and heard by the ALJ in January 1994. Moreover, we note that even before the administrative accusation was filed, section 17206 required that an action for civil penalties be brought in a "court of competent jurisdiction." (Stats. 1992, ch. 430, § 4.)

(§ 17206, fn. 7, *ante*) and (2) injunctive relief to enjoin future violations and an award of restitution (§ 17203).[16] Section 17535 provides that violators of the false advertising provisions may be enjoined "by any court of competent jurisdiction." Section 17536 authorizes a civil penalty for false advertising which "shall be assessed and recovered in a civil action brought . . . in any court of competent jurisdiction."

Thus, the civil statutes do not authorize that any action be taken against the registration. The administrative statutes do not authorize imposition of a civil penalty for unfair business practices.

Since the administrative and civil provisions afford cumulative remedies which cannot all be sought in one proceeding, the statutory scheme plainly envisions that both an administrative proceeding and a civil action may be brought. Since res judicata in its primary aspect would bar a second action, res judicata clearly does not apply. Defendant's position would make the remedies mutually exclusive, contrary to the statutory command that they be cumulative.

Defendant argues the fact that different relief sought in the second action does not prevent application of res judicata. However, we do not hold the mere seeking of a different remedy renders res judicata inapplicable. Rather, our conclusion is that res judicata is inapplicable because the first proceeding was an administrative proceeding at which the second remedy (statutorily decreed to be a cumulative remedy) could not be sought. Moreover, the sole case cited by defendant does not help him. Thus, defendant cites *Carroll v. Puritan Leasing Co.* (1978) 77 Cal.App.3d 481 [143 Cal.Rptr. 772], in which a plaintiff brought a quiet title action to invalidate a judgment lien on the ground that her separate property was not liable for the judgment. The trial court sustained the defendant's demurrer on the ground the action was barred by the former judgment. The appellate court affirmed, holding the liability being contested in the quiet title action was the extent of the plaintiff's personal liability on the judgment, which was identical to the liability contested in the former action and thus barred by res judicata. (*Id.* at pp. 486-488.) The court rejected the plaintiff's argument that the second action sought to litigate the liability of her property rather than her personal liability. (*Id.* at pp. 487-488.) The court further concluded that even if there

---

[16]Section 17203 provides: "Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."

were separate causes of action, the record showed the plaintiff had had an opportunity to litigate both matters (and had in fact litigated both matters) in the prior action. (*Id.* at pp. 489-493.) Here, we have seen it was not possible to litigate both matters in one proceeding. Thus, the cited authority is inapposite.

(3b) Defendant cites *George Arakelian Farms, Inc.* v. *Agricultural Labor Relations Bd.* (1989) 49 Cal.3d 1279, 1290 [265 Cal.Rptr. 162, 783 P.2d 749], and *Knickerbocker* v. *City of Stockton* (1988) 199 Cal.App.3d 235, 243 [244 Cal.Rptr. 764], for the proposition that res judicata applies to administrative decisions made in a quasi-judicial capacity following an adjudicatory proceeding. However, neither case calls into question our foregoing analysis. Thus, *George Arakelian Farms, Inc., supra,* said "while res judicata rules are generally applicable to administrative orders [citations], their enforcement is more flexible in this context [citation]. ' "The key to a sound solution of problems of res judicata in administrative law is recognition that the traditional principle of res judicata as developed in the judicial system should be fully applicable to some administrative action, that the principle should not be applicable to other administrative action, and that much administrative action should be subject to a qualified or relaxed set of rules concerning res judicata." ' [Citations.]" (*George Arakelian Farms, Inc., supra,* 49 Cal.3d at p. 1290.) In that case, the Agricultural Labor Relations Board (ALRB) denied an employer's motion to reopen a case. The California Supreme Court had previously issued a decree enforcing a previous ALRB order imposing make-whole relief against the employer for losses suffered by employees due to the employer's technical refusal to bargain with the representative labor union. The employer had moved to reopen the matter in light of a subsequent Court of Appeal decision. The California Supreme Court held the new case was inapplicable and the employer was not entitled to have the matter reopened. As concerns us here, the Supreme Court preliminarily held res judicata did not bar the employer's motion to reopen, since the administrative order to impose make-whole relief was interlocutory. (*Ibid.*) Defendant fails to explain how this helps his case.

In the other case cited by defendant, *Knickerbocker* v. *City of Stockton, supra,* 199 Cal.App.3d 235, we applied the secondary aspect of res judicata, collateral estoppel, not the primary aspect of claim preclusion. There, a police lieutenant was fired but was reinstated at the lower rank of sergeant after a civil service commission hearing. He then filed a complaint for damages arising from the termination and demotion. We concluded the administrative proceeding conclusively determined that the plaintiff was properly demoted for disciplinary reasons, and collateral estoppel prevented him from relitigating the matter. We further held, however, the sergeant

could litigate in the civil action the question of damages arising from an improper firing. Thus, *Knickerbocker* did not bar a second action but merely applied the doctrine of collateral estoppel. As indicated, defendant here does not want collateral estoppel.

We conclude this action is not barred by res judicata.

## II. *Splitting Cause of Action*

Defendant contends this action is barred by the rule against splitting a cause of action. We disagree.

The rule against splitting a cause of action is, in part, an application of the doctrine of res judicata. (*Ford Motor Co.* v. *Superior Court* (1973) 35 Cal.App.3d 676, 680 [110 Cal.Rptr. 59].) "It is clearly established that a party may not split up a single cause of action and make it the basis of separate suits, and in such case the first action may be pleaded in abatement of any subsequent suit on the same claim. [Citations.] The rule against splitting a cause of action is based upon two reasons: (1) That the defendant should be protected against vexatious litigation; and (2) that it is against public policy to permit litigants to consume the time of the courts by relitigating matters already judicially determined, or by asserting claims which properly should have been settled in some prior action." (*Wulfjen* v. *Dolton* (1944) 24 Cal.2d 891, 894-895 [151 P.2d 846].) "The violation of one primary right constitutes a single cause of action, though it may entitle the injured party to many forms of relief, and the relief is not to be confounded with the cause of action, one not being determinative of the other." (*Id.* at pp. 895-896, italics omitted.)

Here, there was no prior *judicial* determination, but only an administrative determination, and, as we have seen in our discussion of res judicata, the present action could not have been pursued in the prior administrative proceeding.

An exception to the rule against splitting causes of action exists where the "plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief . . . ." (Rest.2d Judgments, § 26, subd. (1)(C), pp. 233-234; 7 Witkin, Cal. Procedure, *op. cit. supra*, Judgment, § 248, p. 686.)

■   Here, the two actions were neither vexatious nor time-consuming, because the two remedies could not have both been sought in one action.

The cases relied upon by defendant are inapposite, because in all of them the plaintiff could have sought both remedies in a single proceeding. (*Wulfjen* v. *Dolton, supra*, 24 Cal.2d at p. 896 [plaintiff barred from pursuing second action for damages arising from fraud where she could have sought that remedy in alternative counts in her prior action seeking rescission due to the same fraud]; *Ford Motor Co.* v *Superior Court, supra*, 35 Cal.App.3d at p. 679 [plaintiff barred from pursuing second action in state court for alleged unlawful restraint of competition under state law, after losing federal case alleging unlawful restraint of competition under federal law; federal court could have disposed of both claims under pendent jurisdiction].) Here, we have seen the civil and administrative penalties could not have been sought in the proceeding.

Defendant cites *City of Los Angeles* v. *Superior Court* (1978) 85 Cal.App.3d 143 [149 Cal.Rptr. 320], for the proposition that a litigant cannot avoid the impact of the rule against splitting causes of action by choosing for his first foray a tribunal of limited jurisdiction. (*Id.* at p. 151.) However, in that case, the litigant could have filed his first action in a tribunal which had jurisdiction over both his federal and state claims. (*Ibid.*) That was not the case here.

We conclude the rule against splitting a cause of action does not apply.

III.   *Double Jeopardy*

■   Defendant contends he is being "punished" a second time, in violation of the double jeopardy clause of the Fifth Amendment of the United States Constitution, which provides in part that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb . . . ." According to defendant, the probation and 14-day suspension of registration in the administrative action were for the purposes of retribution and deterrence, hence he was "punished" in the administrative action, such that the "punitive" sanctions imposed in the civil action constituted double punishment in violation of the double jeopardy clause. We disagree.[17]

---

[17]Although defendant also asserted in the trial court the *state* Constitution's double jeopardy clause, he makes no argument regarding the state Constitution on appeal, and we therefore address only the federal provision.

The People assert it is unclear whether defendant is complaining of both multiple prosecution and multiple punishment or just the latter. However, it is clear from defendant's appellate briefs that he is complaining about a perceived "double punishment."

Defendant relies heavily on *United States* v. *Halper* (1989) 490 U.S. 435 [104 L.Ed.2d 487, 109 S.Ct. 1892]. *Halper* dealt with a civil penalty imposed against a medical laboratory manager under the False Claims Act (31 U.S.C. §§ 3729-3731) for filing false Medicare claims, after the manager had been criminally convicted for the same acts. The civil statutes provided a fixed penalty of $2,000 for each violation. The manager submitted 65 false claims, each of which overbilled by $9. The question was "whether the statutory penalty authorized by the civil False Claims Act, under which Halper is subject to liability of $130,000 for false claims amounting to $585, constitutes a second 'punishment' for the purpose of double jeopardy analysis." (*United States* v. *Halper*, *supra*, 490 U.S. at p. 441 [104 L.Ed.2d at p. 497].)

■ *Halper* recognized the double jeopardy clause protects against multiple punishments for the same offense. (*United States* v. *Halper*, *supra*, 490 U.S. at p. 440 [104 L.Ed.2d at p. 496].) *Halper* considered it settled that the government may impose both a criminal and a civil sanction with respect to the same act or omission. (*Id.* at p. 443 [104 L.Ed.2d at p. 498].) A civil remedy does not rise to the level of "punishment" merely because the Legislature provided for civil recovery in excess of the government's actual damages. (*Id.* at p. 442 [104 L.Ed.2d at p. 497].) The government "is entitled to rough remedial justice, that is, it may demand compensation according to somewhat imprecise formulas, such as reasonable liquidated damages or a fixed sum plus double damages, without being deemed to have imposed a second punishment for the purpose of double jeopardy analysis." (*Id.* at p. 446 [104 L.Ed.2d at p. 500].) The question was "whether a civil sanction, in application, may be so divorced from any remedial goal that it constitutes 'punishment' for the purpose of double jeopardy analysis." (*Id.* at p. 443 [104 L.Ed.2d at p. 498].)

This assessment is not made from the defendant's perspective; "for the defendant even remedial sanctions carry the sting of punishment." (*United States* v. *Halper*, *supra*, 490 U.S. at p. 447, fn. 7 [104 L.Ed.2d at p. 501].)

In making this assessment, "the labels 'criminal' and 'civil' are not of paramount importance. . . . [A] civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment." (*United States* v. *Halper*, *supra*, 490 U.S. at pp. 447-448 [104 L.Ed.2d at p. 501].) "These goals are familiar. . . . [P]unishment serves the twin aims of retribution and deterrence. . . . Furthermore, '[r]etribution and deterrence are not legitimate nonpunitive governmental

objectives.'[18] [Citation.] From these premises, it follows that a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment. . . . [U]nder the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution."[19] (*United States* v. *Halper, supra,* 490 U.S. at pp. 448-449 [104 L.Ed.2d at p. 502].) The *Halper* court acknowledged this inquiry would not be an exact pursuit, and the government was entitled to "rough justice." (*Ibid.*)

*Halper* specified it was announcing a rule "for the rare case . . . where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused. The rule is one of reason: Where a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as 'punishment' in the plain meaning of the word, then the defendant is entitled to an accounting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment." (*United States Halper, supra,* 490 U.S. at p. 449 [104 L.Ed.2d at p. 502], fn. omitted.) In a footnote, *Halper* said it "hardly seems necessary to state that a suit under the [False Claims] Act alleging one or two false claims would satisfy the rational-relationship requirement. It is

---

[18]However, the United States Supreme Court has also said deterrence "may serve civil as well as criminal goals." (*United States* v. *Ursery* (1996) 518 U.S. __ [135 L.Ed.2d 549, 570, 116 S.Ct. 2135].)

[19]This quotation from *Halper* has created confusion, because it first suggests a civil sanction is punishment for double jeopardy purposes if the sanction is even *partially* aimed at deterrence or retribution, but then indicates a sanction is punishment if its *only* purpose is deterrence or retribution. (See, e.g., *U.S.* v. *Reyes* (5th Cir. 1996) 87 F.3d 676, 678, fn. 2.) Defendant believes *Halper* stands for the proposition that a civil sanction invokes the double punishment aspect of the double jeopardy clause if it is aimed in part at deterrence or retribution, even though it also serves a remedial purpose. However, the United States Supreme Court recently classified *Halper*'s statement to this effect as dictum and said it was not intended to establish a general rule. (*United States* v. *Ursery, supra,* 518 U.S. at p. __, fn. 2 [135 L.Ed.2d at p. 566].) "[I]t is hard to imagine a sanction that has no punitive aspect whatsoever." (*Ibid.*) *Ursery* held in rem civil forfeitures of property related to drug activity (which served both punitive and remedial purposes) did not constitute punishment for double jeopardy purposes. *Ursery* reached this result despite acknowledging that such forfeitures may have certain punitive aspects in addition to their nonpunitive goals. (*Id.* at p. __ [135 L.Ed.2d at p. 569].) Thus, contrary to defendant's argument, the fact that a sanction has a punitive aspect does not necessarily mean it constitutes punishment for double jeopardy purposes.

*Ursery* was decided after the filing of the respondent's brief in this appeal. We allowed the People to file a supplemental letter brief concerning *Ursery,* and defendant addressed the case in his reply brief, wherein he acknowledges *Ursery* limited application of some cases cited in his opening brief but insists *Ursery* left intact *Halper.* We discuss the point, *post.*

only when a sizable number of false claims is present that, as a practical matter, the issue of double jeopardy may arise." (*Id.* at p. 451, fn. 12 [104 L.Ed.2d at p. 504].)

The *Halper* court concluded a $130,000 civil sanction would qualify as "punishment" for double jeopardy purposes because of a lack of rational relation to the $16,000 estimated expense incurred by the government. The United States Supreme Court did not, however, hold the second action was barred. Rather, the matter was remanded for the trial court to determine the government's actual costs arising from the fraud and allow the government to recover its demonstrated costs. (*United States* v. *Halper*, *supra*, 490 U.S. at p. 452 [104 L.Ed.2d at p. 504].)

Here, defendant claims the probation and 14-day suspension in the administrative action were for purposes of retribution and deterrence and therefore constituted "punishment" under *Halper*, such that imposition of the "punitive" sanctions in the civil action constituted double punishment. Defendant does not claim the administrative order to pay $4,600 was punitive but instead concedes it was remedial—to reimburse the government's investigation costs. Although *Halper* said remedial justice may be imprecise, like liquidated damages, defendant claims this aspect of *Halper* is inapplicable here because (1) it is supposedly undisputed that the monetary sanctions imposed in the civil action were "solely penal," (2) the state already recovered its full costs in the administrative action, (3) *Halper*'s liquidated damages analogy is not applicable to nonmonetary sanctions such as probation and suspension, and (4) the probation and suspension did not serve to reimburse the state. We disagree with defendant's conclusion that *Halper* compels reversal.

The narrowness of *Halper* was stressed not only in *Halper* itself but also in subsequent cases. Thus, as indicated (see fn. 19, *ante*), *United States* v. *Ursery*, *supra*, 518 U.S. __, fn. 2 [135 L.Ed.2d 549, 566], held *Halper* did not apply to forfeiture cases, where the question to be decided was whether the proceedings were punitive either by legislative intent or in effect. (*Ursery*, *supra*, 518 U.S. at p. __ [135 L.Ed.2d at p. 568.) Defendant claims *Ursery* did not alter the underlying validity of *Halper* but instead distinguished *Halper* on the basis that it involved in personam proceedings against an individual, while *Ursery* involved in rem proceedings against property. (*Ursery*, *supra*, 518 U.S. at p. __ [135 L.Ed.2d at p. 565].) It is true *Ursery* made this distinction and said the "in rem" nature of proceedings designated as civil by Congress created a presumption that they were not subject to the double jeopardy clause, a presumption which could be overcome by clear proof that they were so punitive in purpose or effect as to be equivalent to a

criminal proceeding. (*Ursery, supra*, 518 U.S. at p. __, fn. 3 [135 L.Ed.2d at p. 569].) However, *Ursery* also indicated at least implicitly that *Halper* was limited to *monetary* penalties. Thus, *Ursery* reiterated that *Halper* has a "narrow scope" and observed: "The civil penalty involved in *Halper* . . . provided for a fixed monetary penalty . . . . Whether a 'fixed-penalty provision' that seeks to compensate the Government for harm it has suffered is 'so extreme' and 'so divorced' from the penalty's nonpunitive purpose of compensating the Government as to be a punishment may be determined by balancing the Government's harm against the size of the penalty. . . . [I]t is virtually impossible to quantify, even approximately, the nonpunitive purposes served by a particular civil forfeiture." (*Ursery, supra*, 518 U.S. at p. __, fn. 2 [135 L.Ed.2d at pp. 565, 566].) Moreover, *Ursery* clarified that the fact that a sanction has a punitive aspect does not necessarily mean it constitutes punishment for double jeopardy purposes.

Various post-*Halper* federal circuit court cases have held *Halper* was limited to monetary fines and did not apply to administrative suspensions. Thus, for example, *Manocchio* v. *Kusserow* (11th Cir. 1992) 961 F.2d 1539, held an administrative suspension of a physician from participating in Medicare, following the physician's conviction for filing fraudulent Medicare claims, did not violate the double jeopardy clause. The court rejected the contention that *Halper* required a particularized assessment to determine whether the sanction as applied in the individual case served the goals of punishment. (*Id.* at p. 1542.) *Halper* did not apply because no monetary damages had been assessed. (*Ibid.*) Nevertheless, *Halper* was helpful in framing the analysis, in that the determination whether a civil sanction constituted criminal punishment turned on the purposes actually served by the sanction, not the underlying nature of the proceeding. (*Ibid.*) Although the doctor's five-year suspension for filing a $62 false claim carried the "sting of punishment," it served the remedial purpose of enabling the Department of Health and Human Services to keep out of the program those who defraud the program, depriving patients of needed services or supplies and diverting taxpayer funds from their intended purpose. (*Ibid.*)

Similarly, the Ninth Circuit in *U.S.* v. *Borjesson* (9th Cir. 1996) 92 F.3d 954, held exclusion from participating in government programs was not punishment for double jeopardy purposes. There the defendant was convicted of equity skimming and mail fraud arising from his assumption of home mortgages insured by the Department of Housing and Urban Development (HUD) and the Veterans' Administration (VA). (*Id.* at p. 955.) While awaiting sentencing, he was excluded by HUD from participating in HUD programs for an indefinite period of time. (*Ibid.*) On appeal he claimed his debarment from HUD programs qualified as punishment for double

jeopardy purposes, such that his criminal sentence should be set aside. The Ninth Circuit said it joined other circuits which have held debarment is not punitive because its purpose is to purge government programs of corrupt influences and prevent improper dissipation of public funds. (*Id.* at p. 956.) The Ninth Circuit rejected the defendant's argument that under *Halper* the debarment, even if generally remedial, was applied in a punitive fashion. (*Ibid.*) The *Borjesson* court disagreed, noting *Halper*'s approach—requiring a case-by-case comparison of damages caused to penalty imposed—was confined to the "rare case" where a fixed-penalty provision subjected a prolific but small-gauge offender to an overwhelmingly disproportionate sanction. (*Borjesson*, *supra*, 92 F.3d at p. 956.) "The [United States Supreme] Court has . . . declined to apply *Halper*'s 'balancing test' outside the fixed-penalty context. Most recently, in *Ursery*, it found *Halper*'s calculus inapplicable because it is 'virtually impossible to quantify, even approximately, the non-punitive purposes served by a particular civil forfeiture.' [Citation.] In the case of debarment, a non-monetary sanction, quantification is out of the question. *Ursery*, not *Halper*, must guide us." (*Borjesson*, *supra*, 92 F.3d at p. 956, fn. omitted.) Under *Ursery*, the Ninth Circuit considered both the stated purposes of the statutes and their practical effects; the presence of a punitive aspect was not dispositive where the provisions served important nonpunitive goals. (*Borjesson*, *supra*, 92 F.3d at p. 955.) The fact that debarment's goal of maintaining the integrity of government programs may resemble the punitive objective of deterrence "is inevitable, and does not change the essentially remedial character of debarment." (*Id.* at p. 956.)

We agree with *Borjesson*.

Here, there were no monetary penalties in the administrative action. Defendant concedes the $4,600 sum ordered in the administrative action was remedial, to reimburse the costs of investigation. He claims only that the nonmonetary sanctions—closing the Autometrics shop for two weeks and placing the dealership on probation—constituted punishment for double jeopardy purposes because they served the purposes of retribution and deterrence.

Since no monetary penalties are at issue with respect to the administrative action, we conclude *Halper* does not control this case.

The question remains whether the suspension and probation constituted punishment for double jeopardy purposes, i.e., whether these sanctions were intended by the Legislature to be punitive or are so punitive in form and effect as to render them punishment regardless of legislative intent.

Defendant defines "punitive" as having a purpose of deterrence or retribution, and "remedial" as having a purpose of reimbursement. That those

definitions are too narrow is apparent from *United States* v. *Ursery, supra,* 518 U.S. __ [135 L.Ed.2d 549], which said statutes calling for forfeiture of property used in connection with drug felonies served important nonpunitive goals, in that they encourage property owners to take care in managing their property, ensure they will not permit the property to be used for illegal purposes, and prevent illegal uses by imposing an economic penalty rendering illegal behavior unprofitable. (*Id.* at p. __ [135 L.Ed.2d at p. 569].) Thus, "remedial" is not merely a financial consideration but encompasses other societal concerns. Indeed, contrary to defendant's reliance on *Halper* for the proposition that deterrence is not a legitimate nonpunitive governmental objective (*United States* v. *Halper, supra,* 490 U.S. at p. 448 [104 L.Ed.2d at p. 502]), *Ursery* makes clear that a deterrent result does not necessarily render the sanction punitive. Thus, *Ursery* said "though [the forfeiture statutes at issue in that case] may fairly be said to serve the purpose of deterrence, we long have held that this purpose may serve civil as well as criminal goals." (*Ursery, supra,* 518 U.S. at p. __ [135 L.Ed.2d at p. 570].)

Defendant claims the suspension and probation were meant to punish him and deter future wrongful conduct, and no remedial purpose was ever shown or claimed.

However, the Automotive Repair Act (which includes the provisions for administrative action to suspend or revoke a dealership registration) plainly is designed to protect the public. (*Gardner* v. *Downtown Porsche Audi* (1986) 180 Cal.App.3d 713, 718-719 [225 Cal.Rptr. 757] [discussing act's importance to consumers in holding that repair shop's purported disclaimer of liability for negligence violated public policy]; *Parada* v. *Claims Court* (1977) 70 Cal.App.3d 766, 768 [139 Cal.Rptr. 87] [Automotive Repair Act was enacted to foster fair dealing and eliminate misunderstandings in transactions involving automotive repairs].)

Although we find no cases on point with respect to the Automotive Repair Act, other similar administrative sanctions have been held to be nonpunitive. Thus, "[t]he purpose of an administrative proceeding concerning the revocation or suspension of a license is not to punish the individual; the purpose is to protect the public from dishonest, immoral, disreputable or incompetent practitioners." (*Ettinger* v. *Board of Medical Quality Assurance* (1982) 135 Cal.App.3d 853, 856 [185 Cal.Rptr. 601] [standard of proof in administrative hearing to discipline physician is clear and convincing proof to reasonable certainty].) "Administrative proceedings are civil in nature. With particular reference to a proceeding to revoke or suspend a license or other administrative action of a disciplinary nature, it has been held in this state that such proceeding is not a criminal or quasi-criminal prosecution. [Citations.] The purpose of such a proceeding is not to punish but to afford

protection to the public upon the rationale that respect and confidence of the public is merited by eliminating from the ranks of practitioners those who are dishonest, immoral, disreputable, or incompetent. [Citations.]" (*Borror* v. *Department of Investment* (1971) 15 Cal.App.3d 531, 540 [92 Cal.Rptr. 525] [in administrative action to revoke real estate salesperson's license, there was no right to court-appointed counsel].)

Defendant argues the purpose of protecting the public does not make a sanction nonpunitive, because the ultimate purpose of all penal laws is to protect the public. However, the purpose of protecting the public is not merely an "ultimate" goal of registration suspension/revocation or of the Automotive Repair Act (or of the unfair business practices laws); it is a direct and primary goal. That this goal "may resemble the legitimate objectives of punishment—including deterrence and incapacitation—is inevitable, and does not change the essentially remedial character . . . ." (*U.S.* v. *Borjesson, supra,* 92 F.3d at p. 956.)

Since administrative actions do not involve punishment, they are not foreclosed by prior criminal actions and do not bar subsequent criminal proceedings. (E.g., *In re Brown* (1995) 12 Cal.4th 205, 215-217 [48 Cal.Rptr.2d 29, 906 P.2d 1184] [suspension from practice of law following misdemeanor convictions did not violate double jeopardy clause]; *People* v. *Superior Court (Moore)* (1996) 50 Cal.App.4th 1202 [double jeopardy did not bar criminal prosecution for drunk driving following administrative suspension of drivers' licenses]; *Baldwin* v. *Department. of Motor Vehicles* (1995) 35 Cal.App.4th 1630, 1638-1642 [42 Cal.Rptr.2d 422] [administrative revocation of driver's license following criminal action for drunk driving did not constitute punishment for double jeopardy purposes];[20] *U.S.* v. *Hudson* (10th Cir. 1994) 14 F.3d 536 [ban from participating in banking activities]; *Manocchio* v. *Kusserow, supra,* 961 F.2d 1539 [five-year exclusion of doctor from Medicare system for filing false claims]; *U.S.* v. *Bizzell* (10th Cir. 1990) 921 F.2d 263 [exclusion from HUD programs and $30,000 fine for supplying false statements].)

Defendant argues cases regarding *professional* licenses are inapplicable, because automotive repair dealers need not demonstrate competency. The purported distinction is unpersuasive.

---

[20]Defendant claims *Curtin* v. *Department of Motor Vehicles* (1981) 123 Cal.App.3d 481 [176 Cal.Rptr. 690], establishes that suspension of a driver's license constitutes punishment. That case, which did not involve any double jeopardy issue, merely said a guiltless person should not suffer driver's license suspension because of an erroneous official act of the state, and where such punishment had been imposed, it should be ameliorated to the extent possible. (*Id.* at p. 486.) The court's use of the word "punishment" does not assist defendant because "even remedial sanctions carry the sting of punishment." (*United States* v. *Halper, supra,* 490 U.S. at p. 447, fn. 7 [104 L.Ed.2d at p. 501].)

Defendant suggests Autometrics' 14-day suspension would not protect the public, because it would not eliminate Autometrics from the ranks of automotive repair dealers. We reject this argument that only the harshest sanction (revocation) can be considered nonpunitive.

Defendant argues it is not universally true that administrative actions are not punishment. He cites a concurring opinion in *Larsen* v. *Department of Motor Vehicles* (1995) 12 Cal.4th 278 [48 Cal.Rptr.2d 151, 906 P.2d 1306], to the effect that the suspension of a driver's license is a civil penalty. (*Id.* at p. 289, conc. opn. of Mosk, J.) However, a concurring opinion has no precedential value and in any event the term "civil penalty" does not necessarily mean "punishment" for double jeopardy purposes.

Defendant also cites *Ford Dealers Assn.* v. *Department of Motor Vehicles* (1982) 32 Cal.3d 347 [185 Cal.Rptr. 453, 650 P.2d 328], for its statement: "It is true that loss of a license may be a serious punishment." (*Id.* at p. 367, fn. 12.) However, the California Supreme Court there was discussing the point that when an administrative regulation (regulating automobile dealers) is challenged, the standard of constitutional vagueness is less strict than when a criminal law is attacked. (*Id.* at p. 366.) The automobile dealers in that case argued for a narrow construction, because their livelihood was at stake, in that their licenses could be revoked. (*Id.* at p. 367, fn. 12.) The court concluded that, although due process protected the right to employment against arbitrary state interference, criminal procedural rules did not apply to administrative license revocation proceedings. (*Ibid.*) *Ford Dealers* does not support the proposition that suspension of a license is punishment for double jeopardy purposes.

Defendant also cites *Brown* v. *Gordon* (1966) 240 Cal.App.2d 659, 667 [49 Cal.Rptr. 901], for the proposition that administrative sanctions may be punitive. He quotes from that case that a reviewing court cannot interfere with imposition of a penalty by an administrative tribunal because the court believes the penalty is too harsh. However, as we have seen, even remedial sanctions bear the "sting of punishment." (*United States* v. *Halper, supra,* 490 U.S. at p. 447, fn. 7 [104 L.Ed.2d at p. 501].) Thus, the fact that an administrative tribunal may impose a "harsh" penalty tells us nothing about the double jeopardy issue.

Thus, the cited cases do not help defendant.

We conclude the administrative sanctions in this case did not constitute "punishment" for double jeopardy purposes. Since he was not "punished" in the administrative action, he was not subjected to "multiple punishment" in

the civil action, and the double jeopardy clause is not implicated. We therefore need not address the parties' arguments concerning the sanctions imposed in the civil action.

## DISPOSITION

The judgment is affirmed.

Raye, J., and Morrison, J., concurred.