[No. A124859. First Dist., Div. One. Mar. 30, 2010.]

LAWRENCE BEZIRDJIAN, Plaintiff and Appellant, v.
DAVID J. O'REILLY et al., Defendants and Respondents.

**COUNSEL**

Glancy Binkow & Goldberg, Lionel Z. Glancy, Michael M. Goldberg, Sarah C. Marriott; Harwood Feffer and Samuel K. Rosen for Plaintiff and Appellant.

Jones Day, Craig E. Stewart and Philip E. Cook for Defendants and Respondents.

OPINION

**DONDERO, J.**—In this shareholder derivative action, plaintiff Lawrence Bezirdjian appeals the trial court's orders granting nominal defendant Chevron Corporation's motion for judgment on the pleadings and dismissing his lawsuit. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On May 22, 2007, plaintiff filed a shareholder derivative complaint on behalf of Chevron Corporation (Chevron) against current and certain former members of its board of directors (Board).[1] The complaint contains counts for breach of fiduciary duties, gross mismanagement, constructive fraud, and waste of corporate assets, in connection with illicit payments Chevron allegedly made to Saddam Hussein in exchange for Iraqi oil from 2000 to 2003. In the complaint, plaintiff acknowledged that the majority of his factual allegations were derived from an article published by The New York Times on May 8, 2007, entitled *Chevron Seen Settling Case on Iraq Oil*. He also alleged that he was excused from making a prefiling demand on the Board to institute this action because such demand would be futile. Specifically, he stated "the [Board] cannot exercise independent objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action because each of its members participated personally in the wrongdoing or are dependent upon other Defendants who did."

On August 9, 2007, the trial court filed its order staying the action. The order includes a stipulation from the parties deeming the complaint to be a stockholder's demand to pursue the claims alleged therein, and giving the Board until December 1, 2007, to act on the demand. Plaintiff was granted leave to amend the complaint within 15 days upon the lifting of the stay. The matter was subsequently continued several times.

On June 17, 2008, plaintiff filed an amended shareholder derivative complaint. The amended complaint repeats the original complaint's allegations concerning the illicit payments, deletes the allegation excusing a

---

[1] "Because a corporation exists as a separate legal entity, the shareholders have no direct cause of action or right of recovery against those who have harmed it. The shareholders may, however, bring a derivative suit to enforce the corporation's rights and redress its injuries when the board of directors fails or refuses to do so. When a derivative suit is brought to litigate the rights of the corporation, the corporation is an indispensable party and must be joined as a nominal defendant." (*Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1108 [72 Cal.Rptr.3d 129, 175 P.3d 1184].)

prefiling demand, and adds the following: "Plaintiff made demand on Chevron to commence legal action . . . . Plaintiff's demand was refused. Accordingly, plaintiff has made sufficient effort to get Chevron to bring this action and need do no more." This portion of the complaint goes on to state that the Board had formed a special committee of directors (Committee) to consider and respond to plaintiff's demand. On April 30, 2008, the Committee reported to the Board "that it had concluded its investigation and . . . had determined it not to be in the best interests of Chevron or its stockholders to pursue the claims asserted herein." Thereafter, Chevron management was directed to seek dismissal of the action.

Attached to the complaint as an exhibit is a letter dated June 11, 2008, from Chevron's attorney. The letter states that the Board had granted the Committee "the power to investigate, analyze, deliberate upon, and respond to the demand," and had further resolved that the Committee's conclusions would be binding on the Board without further review. The letter goes on to state that the Committee and its counsel interviewed 34 individuals and reviewed over 150,000 pages of documents in the course of its investigation into the complaint's allegations.

On July 21, 2008, Chevron filed a demurrer to the amended complaint.[2]

On August 20, 2008, the trial court overruled the demurrer but advised the parties that it would entertain a motion to dismiss.

On January 7, 2009, Chevron filed a motion for judgment on the pleadings. In its motion, Chevron sought to make a prima facie showing that the directors who comprised the Committee were independent, and that they had acted reasonably and in good faith in declining to pursue the underlying lawsuit. Chevron also asked the court to take judicial notice of certain court records, Chevron's 2008 proxy statement, and a set of facts stipulated to by the parties.

On March 11, 2009, the trial court granted Chevron's motion and dismissed the action.

Judgment in favor of Chevron was filed on April 27, 2009. This appeal followed.

---

[2] The record on appeal does not include a copy of the demurrer or plaintiff's opposition to the demurrer.

**DISCUSSION**

I. *Standard of Review*

We review de novo a trial court's judgment on an order granting a motion for judgment on the pleadings. (*Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 515 [101 Cal.Rptr.2d 470, 12 P.3d 720] (*Gerawan*).) "On appeal from a judgment on the pleadings, the court assumes the truth of, and liberally construes, all properly pleaded factual allegations in the complaint. [Citation.] The court may also consider evidence outside of the pleadings that was considered by the trial court without objection [citation], and it may consider matters subject to judicial notice." (*Stone Street Capital, LLC v. California State Lottery Com.* (2008) 165 Cal.App.4th 109, 116 [80 Cal.Rptr.3d 326].)

II. *Motion for Judgment on the Pleadings*

Chevron's motion for judgment on the pleadings does not indicate that it was brought pursuant to statute. "Since 1994, motions for judgment on the pleadings have been authorized by statute. [Citations.] Previously, they were allowed by common law. [Citations.] Generally, as such motions were, so they remain." (*Gerawan, supra,* 24 Cal.4th 468, 482, fn. 2.) Code of Civil Procedure section 438, subdivision (c)(1)(B)(i) and (ii), provides that a motion for judgment on the pleadings may be brought by a defendant on the grounds that the court "has no jurisdiction of the subject of the cause of action alleged in the complaint" or that the complaint "does not state facts sufficient to constitute a cause of action against that defendant."[3]

"The standard for granting a motion for judgment on the pleadings is essentially the same as that applicable to a general demurrer, that is, under the state of the pleadings, together with matters that may be judicially noticed, it appears that a party is entitled to judgment as a matter of law." (*Schabarum v. California Legislature* (1998) 60 Cal.App.4th 1205, 1216 [70 Cal.Rptr.2d 745].) "Matters which are subject to mandatory judicial notice may be treated as part of the complaint and may be considered without notice to the parties. [Citation.] Matters which are subject to permissive judicial notice must be specified in the notice of motion, the supporting points and authorities, or as the court otherwise permits." (*Id.* at fn. 5.) "Judgment on the pleadings does

---

[3] We note in passing that Code of Civil Procedure section 438, subdivision (f)(2), provides that a motion for judgment on the pleadings may be made by a defendant if "the defendant has already filed his or her answer to the complaint and the time for the defendant to demur to the complaint has expired." It appears no defendants have filed answers in this action. We need not address this apparent conflict with the statutory requirements, however, as neither party has invoked this provision.

not depend upon a resolution of questions of witness credibility or evidentiary conflicts. In fact, judgment on the pleadings must be denied where there are material factual issues that require evidentiary resolution. [Citation.] In determining whether the pleadings, together with matters that may be judicially noticed, entitle a party to judgment, a reviewing court can itself conduct the appropriate analysis and need not defer to the trial court." (*Id.* at p. 1216.)

## III. *Delaware Law on Derivative Actions*

■ Before proceeding to plaintiff's contentions, we review some basic principles regarding shareholder derivative actions. Chevron is incorporated in the State of Delaware, and both parties agree that Delaware law applies in this lawsuit. "A basic principle of the General Corporation Law of the State of Delaware is that directors, rather than shareholders, manage the business and affairs of the corporation. [Citations.] 'The exercise of this managerial power is tempered by fundamental fiduciary obligations owed by the directors to the corporation and its shareholders.' [Citation.] The decision to bring a law suit or to refrain from litigating a claim on behalf of a corporation is a decision concerning the management of the corporation. [Citation.] Consequently, such decisions are part of the responsibility of the board of directors." (*Spiegel v. Buntrock* (Del. 1990) 571 A.2d 767, 772–773 (*Spiegel*).)

■ " 'Because the shareholders' ability to institute an action on behalf of the corporation inherently impinges upon the directors' power to manage the affairs of the corporation the law imposes certain prerequisites on a stockholder's right to sue derivatively.' [Citations.] Chancery Court Rule 23.1[4] requires that shareholders seeking to assert a claim on behalf of the corporation must first exhaust intracorporate remedies by making a demand on the directors to obtain the action desired, or to plead with particularity why demand is excused. [Citations.] [¶] The purpose of pre-suit demand is to assure that the stockholder affords the corporation the opportunity to address an alleged wrong without litigation, to decide whether to invest the resources of the corporation in litigation, and to control any litigation which does occur." (*Spiegel, supra*, 571 A.2d 767, 773, fn. omitted.)[5]

---

[4] Delaware Chancery Court Rules, rule 23.1(a) provides, in part: "The complaint shall . . . allege with particularity the efforts, if any, . . . to obtain the action the plaintiff desires from the directors . . . and the reasons for the plaintiff's failure to obtain the action or for not making the effort."

[5] California law is similar to that of Delaware. Corporations Code section 800, subdivision (b)(2) requires that the plaintiff in a shareholder derivative suit "allege[] in the complaint with particularity plaintiff's efforts to secure from the board such action as plaintiff desires, or the reasons for not making such effort, and allege[] further that plaintiff has either informed the corporation or the board in writing of the ultimate facts of each cause of action

■ Courts generally accord some deference to a corporation's decision to refuse a shareholder's demand: "Since a conscious decision by a board of directors to refrain from acting may be a valid exercise of business judgment, 'where demand on a board has been made and refused, [courts] apply the business judgment rule in reviewing the board's refusal to act pursuant to a stockholder's demand' to file a lawsuit. [Citation.] The business judgment rule is a presumption that in making a business decision, not involving self-interest, the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company. [Citations.] 'The burden is on the party challenging the decision to establish facts rebutting th[is] presumption.' [Citation.] Thus, the business judgment rule operates as a judicial acknowledgement of a board of directors' managerial prerogatives." (*Spiegel, supra,* 571 A.2d 767, 773–774, fn. omitted.)

The presumption created by the business judgment rule is not absolute. However, to rebut the presumption, a plaintiff must plead with particularity facts that create a reasonable doubt as to the good faith or reasonableness of a board's investigation. (*Scattered Corp. v. Chicago Stock Exchange* (Del. 1997) 701 A.2d 70, 73 (*Scattered*).) Mere conclusory allegations are insufficient. (*Levine v. Smith* (Del. 1991) 591 A.2d 194, 211 (*Levine*).) "If there is reason to doubt that the board acted independently or with due care in responding to the demand, the stockholder may have the basis *ex post* to claim wrongful refusal. The stockholder then has the right to bring the underlying action with the same standing which the stockholder would have had, *ex ante*, if demand had been excused as futile." (*Grimes v. Donald* (Del. 1996) 673 A.2d 1207, 1219, fn. omitted (*Grimes*).)

## IV. *Alleged Conversion of Motion on the Pleadings to One for Summary Judgment*

Plaintiff first claims that Chevron improperly "converted" its motion for judgment on the pleadings into a motion for summary judgment by introducing extrinsic evidence. Specifically, he argues that Chevron improperly "seeks to introduce the truth of the Committee's findings as judicially noticeable," and insists the trial court should have required Chevron to produce this evidence. Plaintiff's argument lacks merit.

Preliminarily, it is not entirely clear to us that Chevron has ever sought to introduce extrinsic evidence of the Committee's findings. To the extent Chevron informed the trial court that the Committee had recommended against pursuing the underlying litigation, that fact was already admitted by

against each defendant or delivered to the corporation or the board a true copy of the complaint which plaintiff proposes to file."

plaintiff in his complaint, wherein he stated that on April 30, 2008, the Committee reported to the Board "that it had concluded its investigation and . . . had determined it not to be in the best interests of Chevron or its stockholders to pursue the claims asserted herein." Further, a letter from Chevron's counsel, dated June 11, 2008, and incorporated into plaintiff's complaint as an exhibit, states: "The committee investigated the allegations in your client's demand. It retained the firm of Venable, LLP to represent it as its outside counsel. The committee and its counsel interviewed 34 individuals, reviewed over 150,000 pages of documents, and performed such other analyses as they deemed appropriate." We also note plaintiff stipulated to facts demonstrating on their face that the three Board members who comprised the Committee were appointed to the Board after the alleged wrongful conduct had occurred.[6] The trial court's decision simply recites these facts as the basis for its ruling and does not contain any references to extrinsic evidence.[7]

Second, the cases upon which plaintiff relies do not support his contentions. In particular, *Saltarelli & Steponovich v. Douglas* (1995) 40 Cal.App.4th 1 [46 Cal.Rptr.2d 683] is inapposite. In *Saltarelli*, a law firm had filed a lawsuit against a former client for unpaid fees and costs. (*Id.* at pp. 3–4.) The client then filed a petition for bankruptcy, and the debt to the law firm was discharged. The client filed a motion to dismiss the complaint on the ground that it was barred by the discharge, relying on a declaration from his attorney and several exhibits. (*Id.* at p. 4.) The action was dismissed with prejudice and the law firm appealed. (*Ibid.*) Before reaching the merits, the appellate court observed: "The procedure of moving to dismiss an action based on extrinsic evidence is disapproved in California and the motion is permitted only where it complies with the requirements for a motion for summary judgment." (*Id.* at p. 5.) The court found that the motion to dismiss failed to comply with any of the procedural requirements for a summary judgment motion. (*Ibid.*) Nevertheless, the court concluded it could properly "treat the matter as an appeal from a dismissal entered after the granting of a nonstatutory motion for judgment on the pleadings." (*Ibid.*) The court observed, "Such a motion may be granted when the complaint fails to state facts sufficient to constitute a cause of action. In considering this motion, the court may consider matters properly subject to judicial notice." (*Ibid.*) *Saltarelli* does not support plaintiff's argument because the motion at issue in the

---

[6] The three Chevron directors who comprised the Committee were appointed between 2004 and 2006. As noted above, the wrongful conduct described in the complaint is alleged to have occurred between 2000 and 2003.

[7] While the June 11, 2008 letter indicates that the Committee concluded plaintiff's substantive allegations lacked merit, the trial court did reference this conclusion in its ruling.

present case *is* a motion for judgment on the pleadings, the very same motion that the appellate court found to be appropriate under the circumstances of that case.

We deduce plaintiff is challenging the trial court's reliance on the facts incorporated in his complaint to establish "both the independence and diligence" of the Committee. At this stage of the proceedings, however, Chevron was not required to prove conclusively by a preponderance of the evidence the Committee was independent or that it had acted diligently and in good faith. Instead, it was *plaintiff's burden to allege facts sufficient to rebut the presumption the Committee exercised valid business judgment when it refused to maintain the underlying lawsuit.* " 'The burden is on the party challenging the decision to establish facts rebutting th[is] presumption.' [Citation.]" (*Spiegel, supra,* 571 A.2d 767, 774.) Chevron's burden was simply to allege facts sufficient to raise the presumption. The trial court did not err in concluding that Chevron had met this burden.

We also note plaintiff's complaint is entirely silent as to the propriety of the Committee's decision to reject his demand.[8] The complaint merely states: "Plaintiff made demand on Chevron to commence legal action as described below in this paragraph. Plaintiff's demand was refused. Accordingly, plaintiff has made sufficient effort to get Chevron to bring this action and *need do no more.*" (Italics added.) As is apparent, the last sentence of this passage is not accurate. Plaintiff was required to adequately allege that the refusal was wrongful. His silence on this corporate decision is significant.

## V. *The Complaint Does Not State a Valid Cause of Action*

Plaintiff contends that his complaint states a valid cause of action under Delaware law. Certainly, the allegations in his complaint with respect to Chevron's alleged payments to Saddam Hussein suggest corporate wrong-doing. Nevertheless, as we have already discussed, it was within the Board's power to refuse to undertake this lawsuit if it deemed the litigation would be contrary to the corporation's best interests. Thus, even assuming, as we must at this stage of the proceedings, that all of the allegations in the complaint are true, plaintiff's failure to rebut the presumption created by the business judgment rule is fatal to his complaint: "Unless the business judgment rule does not protect the refusal to sue, the shareholder lacks the legal managerial power to continue the derivative action, since that power is terminated by the refusal." (*Aronson v. Lewis* (Del. 1984) 473 A.2d 805, 813 (*Aronson*).)

---

[8] Plaintiff does not challenge the court's denial of leave to amend. We note in passing that "Denial of leave to amend after granting a motion for judgment on the pleadings is reviewed for abuse of discretion." (*Ott v. Alfa-Laval Agri, Inc.* (1995) 31 Cal.App.4th 1439, 1448 [37 Cal.Rptr.2d 790].)

Plaintiff erroneously relies on *Aronson, supra*, 473 A.2d 805, 815, for the proposition that " 'a transaction may be so egregious on its face that board approval cannot meet the test of business judgment, and a substantial likelihood of director liability therefore exists.' " The passage is taken out of context. In *Aronson*, the Delaware Supreme Court was addressing the showing that a plaintiff is required to make when he or she alleges that a demand on a corporation would be futile. In such cases, the court held that in order to satisfy the second prong of a two-fold test, a plaintiff is required to allege facts with particularity "which, taken as true, support a reasonable doubt that the challenged transaction was the product of a valid exercise of business judgment."[9] (473 A.2d at p. 815.) Thus, *Aronson* did not address the standards that a court must consider in the demand refusal context. Moreover, there is nothing in the record to support plaintiff's repeated assertions that the Committee's decision not to undertake this litigation constitutes an approval of the wrongful conduct alleged in the complaint.[10]

## VI. *Delaware Law Does Not Permit Discovery of Committee Materials*

Plaintiff asserts that Delaware's "substantive law" permits discovery of the Committee's report and the materials that the Committee relied on in refusing his demand. We disagree.

Under Delaware law, discovery of evidence pertaining to a corporation's decision to refuse to pursue a lawsuit is generally not available. As stated in *Scattered, supra*, 701 A.2d 70, 77: "The law in Delaware is settled that plaintiffs in a derivative suit are not entitled to discovery to assist their compliance with the particularized pleading requirement of Rule 23.1 in a case of demand refusal." Instead, "A stockholder who makes a serious demand and receives only a peremptory refusal has the right to use the 'tools at hand' to obtain the relevant corporate records, such as reports or minutes, reflecting the corporate action and related information in order to determine whether or not there is a basis to assert that demand was wrongfully refused." (*Grimes, supra*, 673 A.2d 1207, 1218.)

---

[9] Under the first prong of this test, plaintiffs may raise a reasonable doubt as to whether the directors are disinterested and independent. (*Aronson, supra*, 473 A.2d 805, 814.) The Sixth District Court of Appeal recently addressed the *Aronson* test in a case involving demand futility. (See *Bader v. Anderson* (2009) 179 Cal.App.4th 775, 799 [101 Cal.Rptr.3d 821].)

[10] There are many reasons why a corporation might decline to pursue a lawsuit other than a desire to sanction corporate wrongdoing: "A board may in good faith refuse a shareholder demand to begin litigation even if there is a substantial basis to conclude that the lawsuit would eventually be successful on the merits. It is within the bounds of business judgment to conclude that a lawsuit, even if legitimate, would be excessively costly to the corporation, or harm its long-term strategic interests." (*In re infoUSA, Inc. Shareholders Litigation* (Del.Ch. 2007) 953 A.2d 963, 986.)

Notwithstanding the above, plaintiff claims the trial court erred in stating " 'Delaware law has determined that discovery should *not* be allowed for the purpose of searching for the facts which plaintiffs must allege with particularity.' " He claims the trial court ignored that he had "alleged facts with sufficient particularity to meet the *Aronson* standard." While his argument is not well stated, we assume he is referring to the factual allegations pertaining to the alleged payments to Saddam Hussein, as the complaint alleges no facts regarding the propriety of the Committee's refusal of his demand. In our view, the trial court's reference pertains to facts relating to the Committee's refusal decision only, not to the underlying conduct of which plaintiff complains.

Plaintiff's reliance on *Spiegel* and *Zapata Corp. v. Maldonado* (Del. 1981) 430 A.2d 779 is also inapposite because the appeals in these cases were taken from the denial of alternative motions for dismissal or summary judgment. (*Spiegel, supra,* 571 A.2d 767, 772; *Zapata, supra,* at p. 780.)[11] In *Zapata,* the Supreme Court of Delaware stated that limited discovery may be ordered to facilitate inquiries into the independence and good faith of a corporate committee appointed to evaluate a shareholder's derivative suit. (*Zapata, supra,* at p. 788.) However, the case itself was not one based on the refusal of a shareholder's demand. Instead, the board had decided to seek dismissal of the suit after it had been properly filed as a demand excused case. (*Id.* at p. 787.) As the Delaware Supreme Court has observed: "The rationale for allowing discovery in a demand excused-*Zapata* context *has no application in the case of either demand refused* or demand excused, absent the *Zapata* context." (*Levine, supra,* 591 A.2d 194, 209, italics added.) Again, the instant case is a *demand refusal* derivative lawsuit, not a *demand excused* claim.

Plaintiff also relies on *Young v. Klaassan* (Del.Ch. 2008) 948 A.2d 1152 and *Fleischman v. Huang* (Del.Ch., Aug. 22, 2007, No. Civ.A.2497-CC) 2007 WL 2410386. Again, these cases are not on point. In *Fleischman,* the defendants sought an interlocutory appeal of an order granting limited discovery to the plaintiff. (*Fleischman, supra,* 2007 WL 2410386 at p. *1.) The court of chancery had granted the plaintiff's discovery request after the defendants brought a motion to dismiss that relied on an internal committee's investigation and findings to attack the substance of the plaintiff's complaint. The internal committee's report was not referenced in the plaintiff's complaint. (*Id.* at pp. *1–*2.) Because the defendant had "proffered evidence regarding an ultimate issue of fact relevant to claims asserted in the complaint" but had refused to make the report available to the court or the plaintiff, the court declined to allow the interlocutory appeal. (*Id.* at pp. *4–*5.) Similarly, in *Young,* the defendants' motion "expressly and

---

[11] Plaintiff's reliance on *In re Oracle Derivative Litigation* (Del.Ch. 2003) 824 A.2d 917, 926 is similarly misplaced.

repeatedly rel[ied] on the reportedly favorable findings of the special board committee that investigated the matters alleged in the complaint." (*Young, supra*, at p. 1153.)

In the present case, while Chevron does not concede liability, it has not raised any substantive challenge to the causes of action alleged in plaintiff's complaint. Rather, Chevron has challenged plaintiff's failure to allege that its decision to forgo pursuing this litigation falls outside of the presumption created by the business judgment rule. Absent a specific allegation in the complaint as to why the Committee was not disinterested, or why the refusal was improper, and absent a specific argument from plaintiff as to what more discovery would yield, it is inappropriate "to allow plaintiff to avail himself of a premature opening of the floodgates to discovery in an effort to cure the deficiencies of his complaint." (*Halebian v. Berv* (S.D.N.Y. 2007) 631 F.Supp.2d 284, 298.) Since plaintiff has not pled that the Committee members either lacked independence or failed to act in good faith after reasonable inquiry, he has failed to clear the initial hurdle of an adequate pleading so as to provide a basis for discovery.

## VII.  *California Corporations Code Does Not Require Production*

Finally, plaintiff claims that Corporations Code section 1601 (section 1601) entitles him to the discovery he seeks. Subdivision (a) of that section provides: "The accounting books and records and minutes of proceedings of the shareholders and the board and committees of the board of any domestic corporation, and of any foreign corporation keeping any such records in this state or having its principal executive office in this state, shall be open to inspection upon the written demand on the corporation of any shareholder or holder of a voting trust certificate at any reasonable time during usual business hours, for a purpose reasonably related to such holder's interests as a shareholder or as the holder of such voting trust certificate. The right of inspection created by this subdivision shall extend to the records of each subsidiary of a corporation subject to this subdivision."

Plaintiff does not cite to any authority for the proposition that section 1601 authorizes discovery in an ongoing lawsuit. Nor does he state that he has ever attempted to obtain access to the records he seeks utilizing the procedures set forth in section 1601. As we have already discussed, it was plaintiff's burden to provide the court with facts to rebut the presumption. Plaintiff does not explain why he did not take advantage of the inspection privileges accorded to him by section 1601 to assemble such facts. In sum, plaintiff failed to meet his burden to rebut the presumption created by the business judgment rule with respect to the Committee's decision not to pursue the underlying lawsuit. Accordingly, the trial court correctly granted Chevron's motion for judgment on the pleadings.

## DISPOSITION

The judgment is affirmed.

Marchiano, P. J., and Banke, J., concurred.