Filed 5/30/14  P. v. Vanguard Outdoor CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, et al., <br><br>     Plaintiffs and Appellants, <br><br> v. <br><br> VANGUARD OUTDOOR, LLC, et al., <br><br>     Defendants and Respondents. | B244688 <br><br> (Los Angeles County <br> Super. Ct. No. BC437023) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Malcolm H. Mackey, Judge.  Reversed and remanded with directions.

Michael N. Feuer and Carmen A. Trutanich, City Attorneys, Tina Hess and Jose A. Egurbide, Assistant City Attorneys, Colleen M. Courtney and Andrew K. Wong, Deputy City Attorneys, for Plaintiffs and Appellants.

Knight Law Group, Raaqim A. S. Knight, for Defendants and Respondents Mark Denny and MD Graphic Installers, Inc.

Loeb & Loeb, William M. Broday; Harder Mirell & Abrams, Douglas E. Mirell, for Defendants and Respondents Paramount Contractors and Developers, Inc., Bradley Lawrence Folb, Sunset Blvd. Properties, LP and Patricia M. High.

_____

## INTRODUCTION

This appeal concerns two separate appealable orders in an action brought by plaintiffs and appellants the People of the State of California (the "People") and the City of Los Angeles (the "City") (collectively "Appellants")[1] in the superior court against various companies and individuals for alleged violations of the Outdoor Advertising Act ("OAA") (Bus. & Prof. Code, § 5200 et seq.), the Unfair Competition Law ("UCL") (Bus. & Prof. Code, § 17200 et seq.), public nuisance statutes (Code Civ. Proc., §§ 3479, 3480) and Los Angeles Municipal Code (LAMC, § 11.00, subd. (1)) arising from the installation of supergraphic signs on buildings.

The first appeal is from a September 11, 2012 order of dismissal granting a motion for judgment on the pleadings ("September 11, 2012 Order") by respondents Paramount Contractors and Developers, Inc. ("Paramount"), Patricia High ("High"), Sunset Blvd. Properties, LP ("Sunset") and Bradley Lawrence Folb ("Folb") (collectively "Building Respondents") based on the broad language of a release contained in a stipulation for entry of judgment between Appellants and defendants Vanguard Outdoor, LLC and Pamela K. Anderson (collectively "VO Defendants").

Because we conclude the stipulated judgment did not release the Building Respondents, we reverse.

The second appeal is from an August 24, 2012 order of dismissal sustaining a demurrer ("August 24, 2012 Order") by respondents MD Graphic Installers, Inc. ("MD Graphic") and Mark Denny ("Denny") (collectively "Installer Respondents") to Appellants' claims as barred by res judicata based on a settlement of an administrative action brought by the California Department of Transportation ("Caltrans") for violations of the OAA.

Because we conclude that res judicata does not preclude the instant action, we reverse.

---

[1] The Los Angeles City Attorney represents both the People and the City.

## FACTUAL AND PROCDURAL BACKGROUND

Although part of a long and complicated series of litigation in both state and federal court regarding regulation of supergraphics[2] and other outdoor advertising, the facts relevant to this appeal are fairly straightforward.

## I. Background Relevant to the Building Respondents

The Building Respondents own two office buildings in Los Angeles, located at 6464 and 6565 West Sunset Boulevard.[3] The Building Respondents, as well as other building defendants, leased space on the outside faces of their buildings to VO Defendants, outdoor advertisers, on which to hang supergraphics. The Installer Respondents, as well as other installer defendants, put up and took down the supergraphics.

Appellants filed their original complaint in May 2010 and filed the operative First Amended and Supplemental Complaint in April 2011 ("FASC"), seeking civil penalties, restitution and injunctive relief by way of the UCL, OAA, public nuisance statutes and LAMC.

Between November 2011 and March 2012, Appellants settled with all named defendants except for Building Respondents and Installer Respondents,[4] the parties to this appeal. At issue is the stipulation for entry of judgment executed by Appellants and VO Defendants on March 20, 2012 (the "VO Stipulation") and the final judgment entered by the trial court as to the VO Respondents on the same day ("VO Judgment").

Specifically, the VO Stipulation and the VO Judgment both state:

---

[2] Supergraphic signs are large advertisements that are stretched or pasted across the side of a building. (*World Wide Rush LLC v. City of L.A.* (C.D. Cal. 2009) 605 F.Supp.2d 1088, 1091, rev'd (9th Cir. 2010) 606 F.3d 676.)

[3] Public records list Paramount as an owner of both buildings, list High as an owner of 6464 West Sunset Boulevard and list Sunset as an owner of 6565 West Sunset Boulevard. Folb is the manager of Paramount and Sunset.

[4] The Installer Respondents demurred in February 2012. The trial court's August 24, 2012 Order sustaining their demurrer without leave to amend is discussed in the second half of this appeal.

"'VANGUARD' is defined as any and all of VANGUARD's past, present and future parent companies, subsidiaries, predecessors, successors, affiliates, divisions, joint employers, co-employers and related companies, officers, directors, members, managing members, agents, trustees, shareholders, assigns, beneficiaries, representatives, employees, managers, accountants, owners, investors, partners, insurers, property owners, and attorneys and each of them, both in their individual and representative capacities."[5] The VO Judgment also states that, except as provided in event of a breach of a concurrently executed criminal plea agreement, Appellants "shall not . . . commence a criminal, civil, administrative, regulatory, civil enforcement or any other action or proceeding against VANGUARD and/or ANDERSON or further prosecute it civilly or criminally, for alleged acts, practices and violations of law relating to the design, placement, erection, installation, construction . . . maintenance and/or operation of any Supergraphic Signs, Off-Site Signs, Advertising Displays and/or Other Outdoor Advertising Signage at . . . 6464 West Sunset Boulevard, 6565 West Sunset Boulevard . . . occurring prior to the entry of this Stipulated Judgment."

In April 2012, Appellants and Building Respondents filed a stipulation to extend their time to complete mediation ("Time Stipulation"). Both Appellants and Building Respondents signed the Time Stipulation.[6] The Time Stipulation stated that settlement negotiations had resulted in "the successful resolution of this matter, by way of stipulated judgments, as to each of the following defendants: VANGUARD OURTDOOR, LLC, a California limited liability company; PAMELA K. ANDERSON, an individual; [and other installer and building defendants]" and "the remaining [Building Respondents] and

---

[5] This same definition of "VANGUARD" is used in a plea and proposed sentencing agreement between VO Defendants and the People in a misdemeanor criminal case brought by the City on behalf of the People of California against the VO Defendants, the Installer Respondents and a settling building defendant. We granted Appellant's request for judicial notice of the VO Defendants plea agreement and other documents from the criminal case on May 28, 2013.

[6] Installer Respondents also signed the stipulation.

[Appellants][7] still desire to participate in mediation but were not able to reach agreement on a private mediator until recently . . . ."

On August 6, 2012, the Building Respondents filed their motion for judgment on the pleadings arguing that the VO Stipulation and VO Judgment defined "VANGAURD" to include Building Respondents as agents, representatives or property owners and therefore Appellants released all claims against Building Respondents as part of the VO Stipulation and the VO Judgment.

On August 15, 2012, Appellants and the VO Defendants filed a supplemental stipulation for entry of an amended judgment ("Supplemental Stipulation") and a proposed amended final judgment which stated that "'VANGUARD' expressly excludes the remaining named defendants" in the litigation and listed the Building Respondents and the Installer Respondents. The trial court did not sign either document or enter the amended final judgment.

After argument at the August 28, 2012 hearing, the trial court granted Building Respondents motion for judgment on the pleadings. The court noted that the FASC identified Building Respondents as owners of the properties at 6464 and 6565 Sunset Boulevard and alleged agency, and concluded that Building Respondents were included in the definition of "VANGUARD" in the VO Stipulation.

On September 11, 2012, the trial court ordered dismissal of the FASC.

## II. Background Relevant to the Installer Respondents

The Installer Respondents installed supergraphic and off-site signs at 3000 South Robertson Boulevard. As previously stated, Appellants filed their original complaint in May 2010 and filed the operative FASC in April 2011, seeking civil penalties, restitution and injunctive relief by way of the UCL, OAA, public nuisance statutes and LAMC.

Meanwhile, Caltrans had previously instituted an administrative action and filed an amended accusation in November 2009 ("Accusation") against four entities (who are not parties to this appeal), alleging violations of the OAA at five locations within Los

_____

[7] The stipulation defined Building Respondents as "Paramount/Sunset Defendants" and Appellants as "Plaintiffs".

5

Angeles (which are not at issue in this appeal). On February 2, 2011, the Caltrans action settled ("Caltrans Settlement") and Caltrans released the four entities and twenty-two additional entities who were not named in the Accusation, including the Installer Respondents at issue here, from "all claims . . . of every nature and description, whether known or unknown, contained in or arising out of [the administrative action], or that could have been alleged based on the facts set forth in [the administrative action] . . . , including, without limitation, claims that [released parties] violated on provision of" the OAA, UCL, public nuisance statutes, and other statutes. The Caltrans Settlement also released "claims that [Caltrans] does not know or suspect to exist in its favor" against the released entities, and precluded Caltrans "and others purporting to act on [Caltrans'] behalf from maintaining . . . actions and/or proceedings" in "any forum, including . . . any local, state or federal agency or court, in connection with" the released claims. On February 16, 2011, Caltrans dismissed its Accusation.

Almost a year later, on February 6, 2012, Installer Respondents demurred to the FASC in this action, asking the court to take judicial notice of the Caltrans Settlement and arguing that the Caltrans Settlement release of claims, including UCL claims, was res judicata.

After oral argument at the August 2, 2012 hearing, the trial court sustained the demurrer without leave to amend. The trial court ruled that the Caltrans Settlement's release was res judicata on all causes of action. In the August 24, 2012 Order, the trial court issued an order of dismissal.

## DISCUSSION

We review de novo the sustaining of a demurrer and the grant of a motion for judgment on the pleadings. (*Smiley v. Citibank (S.D.), N.A.* (1995) 11 Cal.4th 138, 145–146.)

"'The standard for granting a motion for judgment on the pleadings is essentially the same as that applicable to a general demurrer, that is, under the state of the pleadings, together with matters that may be judicially noticed, it appears that a party is entitled to

6

judgment as a matter of law.' [Citation.] 'Matters which are subject to mandatory judicial notice may be treated as part of the complaint and may be considered without notice to the parties. [Citation.] Matters which are subject to permissive judicial notice must be specified in the notice of motion, the supporting points and authorities, or as the court otherwise permits.' [Citation.] 'Judgment on the pleadings does not depend upon a resolution of questions of witness credibility or evidentiary conflicts. In fact, judgment on the pleadings must be denied where there are material factual issues that require evidentiary resolution. [Citation.] In determining whether the pleadings, together with matters that may be judicially noticed, entitle a party to judgment, a reviewing court can itself conduct the appropriate analysis and need not defer to the trial court.'" (*Bezirdjian v. O'Reilly* (2010) 183 Cal.App.4th 316, 321–322.) "'In an appeal from a motion granting judgment on the pleadings, we accept as true the facts alleged in the complaint . . . .'" (*Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342, 1361.)

## I. Building Respondents

Appellants People and City, represented by the City Attorney, contend that the trial court erred in granting the Building Respondents motion for judgment on the pleadings because the Building Respondents were not intended to be third party beneficiaries of the VO Stipulation and VO Judgment, that the language unambiguously does not include Building Respondents and, if ambiguous, extrinsic evidence of the circumstances of the VO Stipulation support construing the term "VANGUARD" as excluding the Building Respondents.

The Building Respondents also argue that the plain language of the VO Stipulation is unambiguous but argue that it clearly releases them from liability. We disagree with both these arguments as discussed below.

Stipulated judgments are interpreted according to ordinary contractual principles. In the absence of extrinsic evidence, we may interpret it as a matter of law. (*Jamieson v. City Council of the City of Carpinteria* (2012) 204 Cal.App.4th 755, 761.) Likewise, the meaning of a contractual release is a legal question, not a factual question, and the meaning is resolved by application of contract principles. (*Solis v. Kirkwood Resort Co.*

7

(2001) 94 Cal.App.4th 354, 360.) Whether a part is covered by the language of a release is governed by ordinary principles of contract interpretation. (*Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 528.)

"The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." (Civ. Code, § 1638.) "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." (§ 1636.) "Although 'the intention of the parties is to be ascertained from the writing alone, if possible' (*id.*, § 1639), '[a] contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates' (*id.*, § 1647). 'However broad may be the terms of a contract, it extends only to those things . . . which it appears that the parties intended to contract.' (*Id.*, § 1648.)" (*Hess*, *supra*, 27 Cal.4th at p. 524.)

"A third party beneficiary may enforce a contract made for its benefit. (Civ. Code, § 1559.) However, '[a] putative third party's rights under a contract are predicated upon the contracting parties' intent to benefit' it. [Citation.] Ascertaining this intent is a question of ordinary contract interpretation. [Citation.] Thus, '[t]he circumstance that a literal contract interpretation would result in a benefit to the third party is not enough to entitle that party to demand enforcement.' [Citation.]" (*Hess*, *supra*, 27 Cal.4th at p. 524.) In other words, "[b]ecause the court must consider the circumstances of the contracting parties' negotiations to determine whether a third party not named in the release was an intended beneficiary, it will seldom be sufficient for the third party simply to rely on a literal application of the terms of the release." (*Neverkovec v. Fredericks* (1999) 74 Cal.App.4th 337, 349.) "'Whether a third party is an intended beneficiary . . . to the contract involves construction of the parties' intent, gleaned from reading the contract as a whole in light of the circumstances under which it was entered.' [Citation.]" (*Ibid.*)

Here, Building Respondents rely on a literal reading of the expansive definition of "VANGUARD" used in the VO Stipulation and VO Judgment as including "any and all of VANGUARD's past, present and future . . . agents, . . . representatives, . . . [and]

8

property owners . . . ." As Building Respondents note, the FASC alleges that the Building Respondents are property owners. Likewise, the FASC alleges that defendants acted as "agents, . . . representatives . . . of each other."[8] Thus, on its face, the VO Stipulation and VO Judgment appear to release the Building Respondents. However, "even an apparently unambiguous general release is properly interpreted in light of the surrounding circumstances." (*Neverkovec*, *supra*, 74 Cal.App.4th at p. 350.) Examining the VO Stipulation and VO Judgment and the circumstances under which they were entered shows that Appellants and VO Defendants did not intend to benefit Building Respondents.

First, even though "VANGUARD" was a defined term, there were two definitions of VANGUARD given in the VO Stipulation and VO Judgment. In addition to the broad definition previously quoted of "VANGUARD", the VO Stipulation and the VO Judgment contain a second, narrower definition of the same term that did not include Building Respondents. In identifying the parties, the stipulation and judgment refer to "Defendant[] Vanguard Outdoor, LLC ('VANGUARD')." This narrower definition of the term "VANGUARD" is given again at the beginning of the paragraph that gives the broader definition of "VANGUARD". The VO Stipulation states: "As used herein, 'VANGUARD' refers to Vanguard Outdoor, LLC . . . ." The VO Judgment states: "VANGUARD is a California Limited Liability Company, with its principal place of business in California, and authorized to do business in California . . . ." Even more confusing, when giving the broader definition of "VANGUARD", both the VO Stipulation and the VO Judgment refer to the narrower meaning of "VANGUARD" as part of the broader definition: "'*VANGUARD' is defined as any and all of VANGUARD's*

_____

[8] Building Respondents contend that these allegations constitute judicial admissions and Appellants should be judicially stopped from contradicting them. We do not address these contentions as, even assuming Building Respondents fall within the literal scope of the release, we conclude that, reading the VO Stipulation and VO Judgment in whole and in light of the circumstances under which they were entered, the Building Respondents were not intended third party beneficiaries.

past, present and future . . . agents, . . . representatives, . . . [and] property owners . . . ." (Italics added.)

Moreover, despite giving the broader definition of "VANGUARD", the VO Stipulation uses "VANGUARD" several times with the narrower meaning. For instance, the VO Stipulation refers to the FASC's OAA allegations against "VANGUARD" (but no OAA claims were asserted against the Building Respondents), refers to time extension stipulation for the due date for "VANGUARD's" responsive pleading (but the Building Respondents were not parties to that stipulation), and refers to a criminal complaint against "VANGUARD" (but the Building Respondents were not named defendants in a criminal action).

Similarly, several references in the VO Judgment to "VANGUARD" cannot reasonably be read to include the Building Respondents within its meaning. For instance in the VO Judgment, "VANGUARD" agrees to be enjoined from placing supergraphics in various locations including at 6464 and 6565 West Sunset Boulevard and to be enjoined from business dealings with various named advertisers and installers, agrees to cooperate with the City in its prosecution and to "use its best efforts to make any of VANGUARD's present and former employees and agents available for interviews" and to "produce documents in its possession, custody, or control relating to the subject matters of" the present action and the criminal cases, and agrees that "VANGUARD" could be subject to contempt proceedings for violations. Construing the "clear and explicit" definition of "VANGUARD" to include the Building Respondents would "involve an absurdity" (Civ. Code, § 1638), as the Building Respondents did not agree to be enjoined or to cooperate with Appellants. Indeed, if the release in the VO Judgment included all agents, representatives and property owners[9] as the Building Respondents suggest, the requirement that "VANGUARD" cooperate with the city attorney's office "in its prosecution of the Litigation against the other parties" would be pointless as all defendants would be encompassed by the broad definition of "VANGUARD" and would

---

[9] The FASC alleged that all defendants acted as "agents, . . . representatives . . . of each other."

10

have been released, leaving no "other parties" against whom Appellants could prosecute the instant litigation. (See *Neverkovec*, *supra*, 74 Cal.App.4th at p. 352 [finding a release terminating all claims for damages to be ambiguous in light of the "curious" provision requiring repayment for further amounts collected for the injury, which the court noted could not be expected if the release was operative against anyone liable for plaintiff's injuries].)

Likewise, the circumstances under which the VO Stipulation and VO Judgment were made also do not suggest that Appellants and the VO Defendants intended to benefit the Building Respondents. Appellants and VO Defendants would obviously have been aware that Appellants had claims against the Building Respondents and that those claims were asserted in the same litigation which the VO Stipulation and VO Judgment were settling. Yet neither the VO Stipulation nor the VO Judgment specifically named the Building Respondents as parties to be released, suggesting the release was not intended to cover them. (*Hess*, *supra*, 27 Cal.4th at p. 527 ["The failure of the Release to specifically name [alleged third party beneficiary] even though the signatories to the Release had counsel and were aware of [plaintiff's] claims against [the alleged third party beneficiary] also suggests that the Release did not cover those claims."].) While generally it is not necessary for a third party to be specifically named in a release (*Garcia v. Truck Ins. Exchange* (1984) 36 Cal.3d 426, 436), not naming the Building Respondents in a release when they are named defendants in the same litigation being settled suggests that Building Respondents are not an intended beneficiary of the release.

Moreover, the circumstances showed that Appellants were not entering into a global settlement with all defendants of all claims in the FASC; rather Appellants entered into a series of separate settlements with different groups of named defendants. This strategy suggests that the VO Stipulation and VO Judgment were not intended to release the Building Respondents as part of a settlement with VO Defendants. Indeed, after the VO Stipulation and VO Judgment, Appellants and Building Respondents filed a Time Stipulation seeking additional time for mediation, suggesting that the intent was to have a

11

separate settlement with the Building Respondents.[10]  These circumstances likewise suggest that the parties did not intend the VO Stipulation and VO Judgment to release the Building Respondents.

In short, reading the VO Stipulation and VO Judgment in light of the circumstances under which they were entered, we conclude the Building Respondents were not intended beneficiaries of the release.  Because we reach our conclusion without reference to the Supplemental Stipulation, we do not address Appellants' contention that the trial court erred in not considering the Supplemental Stipulation and the concurrently filed proposed amended judgment.

To the extent the Building Respondents contend that VO Defendants "insist[ed]" upon or intentionally added the broad language to protect it against indemnification claims from agents, representatives and property owners, these assertions are unsupported by any citation to the record and we therefore decline to address them.  (See *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 826, 830.)

## II. Installer Respondents

Appellants contend that the trial court erred in taking judicial notice of the truth of the Caltrans Settlement's contents.  Appellants also assert that the trial court erred in sustaining Installer Respondents' demurrer arguing that res judicata bars this action.  We agree that res judicata does not bar this action and reverse.[11]

---

[10] The language of the Time Stipulation also suggests that the VO Stipulation and VO Judgment were not intended to benefit Building Respondents.  The Time Stipulation stated that settlement negotiations had resulted in "the successful resolution of this matter, by way of stipulated judgments, as to each of the following defendants: VANGUARD OURTDOOR, LLC, a California limited liability company; PAMELA K. ANDERSON, an individual; [and other installer and building defendants]" and "the remaining [Building Respondents] and [Appellants] still desire to participate in mediation but were not able to reach an agreement on a private mediator until recently . . . ."  The Time Stipulation was signed by Appellants and Building Respondents.

[11] We hereby grant Appellants' unopposed April 17, 2014 Request for Judicial Notice of the unpublished opinion by Division Three of this district in *People v. World Wide Mediacom* (Mar. 5, 2014, B241365).  (Evid. Code, §§ 452, subd. (d) & 459;

Preliminarily, we note that there is no indication that the trial court took judicial notice of the truth of the contents of the Caltrans Settlement. Rather the trial court could properly take notice of the Caltrans Settlement and consider whether its res judicata effect barred litigation of the claims against the Installer Respondents in this action. (See *Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548, 1569 ["Whether a factual finding is true is a different question than whether the truth of that factual finding may or may not be subsequently litigated a second time."].)

We turn to the preclusive effect of the Caltrans Settlement. "The doctrine of res judicata rests upon the ground that the party to be affected, or some other with whom he is in privity, has litigated, or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of his opponent. Public policy and the interest of litigants alike require that there be an end to litigation." (*Citizens for Open Access etc. Tide, Inc. v. Seadrift Assn.* (1998) 60 Cal.App.4th 1053, 1065.) "[R]es judicata benefits both the parties and the courts because it 'seeks to curtail multiple litigation causing vexation and expense to the parties and wasted effort and expense in judicial administration.'" (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 897.)

For res judicata to apply to the Caltrans Settlement, it must satisfy three elements:
1) "'[T]he issues decided in the prior adjudication are identical with those presented in the later action;'"
2) "'[T]here was a final judgment on the merits in the prior action; and'"[12]
3) "'[T]he party against whom the plea is raised was a party or was in privity with a party to the prior adjudication.'"

(*Consumer Advocacy Group, Inc. v. ExxonMobil Corp.* (2008) 168 Cal.App.4th 675, 685-686 ("*CAG*"); see *Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797.) "Even

---

*Mangini v. R.J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063 [judicial notice permissible for documents at least minimally relevant to the instant appeal].)

[12] Appellants do not dispute that the requirement that there be a final judgment on the merits was met.

13

if these threshold requirements are established," res judicata does not apply "if injustice would result or if the public interest requires that relitigation not be foreclosed." (*CAG*, *supra*, 168 Cal.App.4th at p. 686.)

Likewise, even if there is the same cause of action and sufficient identity of parties, res judicata would still not apply where there is a "statutory scheme of remedies that contemplates proceedings in different tribunals affording different remedies which are cumulative, not mutually exclusive." (*People v. Damon* (1996) 51 Cal.App.4th 958, 964, 968, 970-971.) Where "the administrative and civil provision afford cumulative remedies which cannot all be sought in one proceeding, the statutory scheme plainly envisions that both an administrative proceeding and a civil action may be brought" and res judicata is inapplicable. (*Id*. at p. 972; see *Le Parc Community Assn. v. Workers' Comp. Appeals Bd.* (2003) 110 Cal.App.4th 1161, 1170 ["An important exception to the general rule of indivisibility of a primary right permits a second action on a different legal theory if the plaintiff was precluded from asserting that theory in the first action because of limitations on the subject matter jurisdiction of the first forum."].)

Here, the statutory scheme contemplates proceedings in different tribunals affording different remedies which are cumulative, not mutually exclusive. Section 17205 of the UCL provides that "the remedies or penalties provided by this chapter are *cumulative* to each other and to the remedies or penalties available under all other laws of this state." (Bus. & Prof. Code, § 17205, italics added.) Likewise, the OAA provides that the remedies for the removal of illegal advertising displays "are cumulative and not exclusive of any other remedies provided by law." (OAA, § 5465.)

The UCL "authorizes duplicate enforcement by both public prosecutors and administrative agencies—a UCL action by law enforcement officials does not preclude a later administrative proceeding against the same defendant concerning the same conduct, and an administrative proceeding does not preclude a later law enforcement action under the UCL." (*Blue Cross of California, Inc. v. Super. Ct.* (2009) 180 Cal.App.4th 1237, 1250.) The OAA contemplates that entities other than Caltrans will enforce its provisions. Specifically, it provides that the city or county may enact ordinances "equal

14

to or greater than those imposed by" the OAA and nothing in the OAA "prohibits enforcement of any or all of its provisions by persons designated so to act by appropriate ordinances duly adopted." (OAA, §§ 5227, 5230.)

Moreover, UCL claims like those raised in the FASC must be "prosecuted exclusively in a court of competent jurisdiction" and therefore could not have brought in the Caltrans administrative action. (Bus. & Prof. Code, § 17204.) Section 17204 of the UCL "authorizes an assortment of persons to bring enforcement actions *but prohibits enforcement of section 17200 in noncourt proceedings* and in courts that lack competent jurisdiction."[13] (*Greenlining Institute v. Public Utilities Com.* (2002) 103 Cal.App.4th 1324, 1330, italics added.) An exception to the rule against splitting causes of action exists where the "'plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief . . . .'" (*People v. Damon*, *supra*, 51 Cal.App.4th at p. 974 [citing Rest.2d Judgments, § 26, subd. (1)(C), pp. 233-234; 7 Witkin, Cal. Procedure, (3d ed. 1985) Judgment, § 248, p. 686].) As the statutory scheme affords "cumulative remedies which cannot all be sought in one proceeding, the statutory scheme plainly envisions that both an administrative proceeding and a civil action may be brought." (*Id*. at p. 972.) Accordingly, res judicata is inapplicable. (*Ibid.*)

Finally, as to Installer Respondents' argument that the contractual language of the Caltrans Settlement bars Appellants' claims in the FASC, we find the argument to be without merit. The Caltrans Settlement involved installation of supergraphics at locations not at issue in this action. To the extent Installer Respondents rely on the broad language

---

[13] Section 17204, however, does not authorize Caltrans as an administrative agency to enforce the UCL in court; rather, only the Attorney General, District Attorney, County Attorney or City Attorney may prosecute under the section. (Bus. & Prof. Code, § 17024.)

of the release to include release of the UCL claims, the release does not bar this action as an administrative agency cannot create jurisdiction over claims where jurisdiction does not exist. (*Greenlinings*, *supra*, 103 Cal.App.4th at p. 1332 ["Even if the [administrative agency] had adjudicated UCL claims, the [agency] cannot create jurisdiction where it does not otherwise exist."]; see *City and County of San Francisco v. Padilla* (1972) 23 Cal.App.3d 388, 400-401 ["when an administrative agency acts without or in excess of its jurisdiction, or in violation of the powers conferred upon it, its action thus taken is void"].)

We conclude that res judicata does not bar Appellants' prosecution against the Installer Respondents in the instant action.

## DISPOSITION

The judgment is reversed. The trial court is directed to vacate its September 11, 2012 Order granting Building Respondents' motion for judgment on the pleadings and to enter a new order denying the motion. The trial court is also directed to vacate its August 24, 2012 order sustaining Installer Respondents' demurrer to the FASC and to enter a new order overruling the demurrer.

Appellants shall recover their costs on appeal.

NOT TO BE PUBLISHED.


                                                    CHANEY, J.


We concur:


        ROTHSCHILD, Acting P. J.



        JOHNSON, J.


16